Kathyleen A. O'Brien
State Bar No. 94218
Rachel A. Rubin
State Bar No. 263753
REED SMITH LLP
1901 Avenue of the Stars
Suite 700
Los Angeles, CA 90067-6078
(310) 734-5268
Fax: (310) 734-5299
kobrien@reedsmith.com
rrubin@reedsmith.com

Attorneys for PEOPLE FOR THE
ETHICAL TREATMENT OF
ANIMALS, INC.

FILED

2010 OCT -8 PM 4:38

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC., a
Virginia corporation,

        Plaintiff,

   vs.

BEYOND THE FRAME, LTD., a United
Kingdom corporation,

       Defendant.

No. **CV10-7576** -MMM(SSx)

**COMPLAINT FOR DECLARATORY
JUDGMENT**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   Plaintiff People For the Ethical Treatment of Animals, Inc., files this complaint

2   for declaratory judgment against Defendant Beyond The Frame Ltd. and alleges as

3   follows:

4   ## I.  THE PARTIES

5

6   1.   Plaintiff People For the Ethical Treatment of Animals, Inc. ("PETA") is a

7   non-profit corporation organized and existing under the laws of Virginia and having a

8   place of business at 2898 Rowena Ave. #103, Los Angeles, California.  PETA

9   regularly engages in business in this judicial district.

10   2.   PETA is an animal protection charity that aims to prevent cruelty to

11   animals via public education, cruelty investigations, research, animal rescue,

12   legislation, special events, celebrity involvement, and protest campaigns.

13   3.   Upon information and belief, Defendant Beyond The Frame Limited

14   ("Defendant") is a United Kingdom corporation with a place of business in London,

15   England.

16   4.   Upon information and belief, Defendant is a film production company.

17   Defendant claims to be the owner by assignment of all copyrights in a film titled "The

18   Animals Film" ("the Film"), made in or around 1981.  Defendant claims that on April

19   13, 2010, it received assignment of all copyrights in the Film and the right to bring

20   proceedings and to claim damages and other remedies in respect of any infringements

21   of copyright in the Film prior to the date of the assignment.

22   ## II. JURISDICTION AND VENUE

23

24   5.   This Court has jurisdiction over the subject matter of this action pursuant

25   to 28 U.S.C. §§ 1331 and 1338(a), in that it involves substantial claims arising under

26   the United States Copyright Act, 17 U.S.C. § 101 *et seq*.

27   6.   This Court may declare the rights and other legal relations of the parties

28   pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

COMPLAINT FOR DECLARATORY JUDGMENT

1    because there is a case of actual controversy within the Court's jurisdiction to provide

2    a declaratory judgment that PETA does not infringe Defendant's copyrights.

3        7.      Defendant is subject to personal jurisdiction in California because, *inter*

4    *alia*, it has conducted business in this state through offering products for sale on its

5    Internet website and, upon information and belief, importing products into this state.

6        8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), (c) and

7    (d).

## III. THE PRESENCE OF AN ACTUAL CONTROVERSY

9

10       9.      Beginning in approximately July 2010, Defendant began demanding

11   monetary payments from PETA based on accusations that PETA infringed

12   Defendant's alleged copyrights in the Film, both in the United States and the United

13   Kingdom.

14       10.     Defendant has accused PETA of improperly using six different scenes

15   from the Film by incorporating, without Defendant's permission, one or more of those

16   scenes into one or more videos produced and distributed by PETA.

17       11.     Beginning in September 2010, those infringement accusations and

18   payment demands escalated. *See* Exhibits A-D hereto.

19       12.     In a letter dated September 7, 2010, counsel for Defendant stated:

20       [I]n the absence of a global settlement, our client will (in addition to the
         UK proceedings) shortly commence proceedings against PETA Inc in the
21       US in respect of its activities in the US.  To this end it has retained US
         Counsel who has agreed to represent our client in respect of those
22       proceedings without charge.  PETA Inc will of course be aware of the
         very substantial statutory damages for copyright infringement in the US
23       (and possible criminal sanctions for intentional infringement). . . . It is
         certainly in your client's interests to [settle this matter globally] given the
24       substantial quantum of the UK claim and the imminent US proceedings.

25   *See* Exhibit A hereto (emphasis added).

26       13.     Along with the September 7, 2010 letter, Defendant's counsel enclosed a

27   copy of a draft of the Particulars of Claim (*i.e.*, Complaint) that Defendant threatened

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 3 -

1    to file in England against PETA and PETA's U.K. affiliate.  *See* Exhibit A hereto.

2    Defendant's Particulars of Claim sets forth Defendant's specific copyright

3    infringement allegations.

4        14.    On September 24, 2010, Defendant filed the aforesaid Particulars of

5    Claim in England against PETA, PETA's U.K. affiliate and British Film Institute.  *See*

6    Exhibit E hereto.

7        15.    PETA denies that it has committed any acts of copyright infringement in

8    the United States with respect to the Film.

9        16.    Therefore, an actual controversy exists between PETA and Defendant

10   with respect to whether PETA has infringed Defendant's alleged copyrights.

11       17.    PETA reasonably believes that, under all the circumstances, there is a

12   substantial controversy between PETA and Defendant of sufficient immediacy and

13   reality to warrant the issuance of a declaratory judgment.

## IV.  COUNT I

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT

16

17       18.    The allegations of Paragraphs 1 through 17 above are incorporated by

18   reference as though fully set forth herein.

19       19.    PETA has not infringed Defendant's alleged copyrights in the Film in the

20   United States.

21       20.    Any use by PETA of portions of the Film are of a nature and purpose that

22   constitute fair use under United States copyright law, 17 U.S.C. § 101 *et seq.*

## V.  PRAYER FOR RELIEF

24

25   WHEREFORE, Plaintiff PETA respectfully prays that:

26   (A)    The Court declare that PETA has not infringed Defendant's copyrights in

27   the Film in the United States;

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 4 -

1    (B)    The Court issue a permanent injunction prohibiting Defendant and

2  anyone acting in concert or in privity with Defendant from charging infringement or

3  instituting legal action in the United States for infringement of Defendant's alleged

4  copyrights in the Film by PETA or anyone acting in privity with PETA;

5    (C)    PETA be awarded its attorneys' fees pursuant to 17 U.S.C. § 505;

6    (D)    PETA be awarded the costs of this action; and

7    (E)    PETA be awarded such other and further relief that this Court deems is

8  just and proper.

## DEMAND FOR A JURY TRIAL

9

10

11    PETA hereby demands a trial by jury in this action.

12                                        Respectfully submitted,

13

14  Dated: October 8, 2010               REED SMITH LLP

15

16                                        Kathyleen A. O'Brien
                                          Rachel A. Rubin
17                                        REED SMITH LLP
                                          1901 Avenue of the Stars
18                                        Suite 700
                                          Los Angeles, CA 90067-6078
19                                        Attorneys for PEOPLE FOR THE
20                                        ETHICAL TREATMENT OF
                                          ANIMALS, INC.
21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

COMPLAINT FOR DECLARATORY JUDGMENT

# EXHIBIT A



SOLICITORS

Our Ref:    MB/SCG/B1054-001/corr/019
Your Ref:   EC/JBR/P1420.32

07 September 2010

Nabarro
Lacon House
Theobald's Road
London
WC1X8RW

Attn: Jonathan Radcliffe

**By post and by email to j.radcliffe@nabarro.com**

**And to**

PETA Inc
501 Front St
Norfolk
VA 23510
USA

Attn. Ingrid Newkirk and Paula Hough

**By post and by email to ingridn@peta.org and to phough@petaf.org**

**Without Prejudice**
**Save As To Costs**

Dear Sirs

**"The Animals Film" – Beyond the Frame Limited**

We refer to our open letter of today and to your without prejudice save as to costs letter and your without prejudice letter both of 27 July 2010.

As it is not clear if Nabarro is also acting for PETA Inc, this letter is sent to both Nabarro and PETA Inc. Please confirm if you are instructed by PETA Inc in relation to our client's claim.

**Our client's claim**

We attach a copy of the current draft of the Particulars of Claim so that your client and PETA Inc can fully appreciate the claims being made against them. Given the failure of PETA Inc to

60 Charlotte Street  London  W1T 2NU  T +44 (0)20 7291 3500  F +44 (0)20 7291 3511

Partners  Andrew Forbes  Dominic Free  Martyn Bailey  George Festing
Consultant  Fiona Anderson
Regulated by the Solicitors Regulation Authority
The number under which the firm is recognised by the Solicitors Regulation Authority is 00350235
Forbes Anderson Free does not accept service of proceedings or any other documents or notices by email



Forbes
anderson
Free

SOLICITORS

Nabarro & PETA Inc.
7 September 2010
Page 2

respond to our letter dated 21 July 2010, the proceedings will be issued against both PETA UK and PETA Inc.

The numerous additional infringements set out in our open letter of today which were concealed by your client and PETA Inc make this matter more difficult to resolve. However, in view of your without prejudice letters, our client thought it worth making an attempt to resolve this matter before proceedings are issued.

We will firstly respond to a number of points in your without prejudice save as to costs letter regarding the UK position before addressing the global position.

**UK position**

**Extent of infringement**

As you essentially accept in your letter, there is no dispute that your client has infringed our client's copyright in respect of which our client is entitled to damages.

With regard to your comments regarding the scope of the infringement, please note –

- the Film Scenes in fact range from 4-44 seconds.

- contrary to your claim, the film of *State of the Union Undressed 2010* remains accessible on your client's site at www.peta.org.uk (simply click on the TV icon at the top of the homepage) (although the Film Scenes have now been removed from the film). This is a further infringement by your client (irrespective of whether the film was made by PETA US) in respect of which our client is entitled to damages from your client.

- in addition, your client has placed and/or authorised others to place copies of the films on the video sharing website www.youtube.com ("You Tube"), including on the You Tube 'Channel' named 'Peta Europe' thereby authorising the party or parties in control of You Tube to copy and to make the Film Scenes available to the public by electronic transmission in such a way that members of the public may access those Film Scenes from a place and at a time individually chosen by them. *Meet Your Meat* has been viewed more than 2.5 million times on You Tube. The message on You Tube is that "*No PETA videos are copyrighted so copy them for everyone you know*".

- furthermore, the film "*Meet your Meat*" can be ordered for delivery on your client's website to interested viewers on various forms of recorded media (including DVD). Our client's representatives have ordered and obtained a copy. The distribution of this film on recorded media is a further infringement of our client's copyright by your client and PETA Inc (irrespective of who produced the DVD and/or whether they charge for the DVD). We also note that your firm) acknowledged in a phone call with the BFI's lawyer Richard Brousson in December 2009 that your client needed a licence in respect of UK DVD exploitation (as well as internet exploitation).

**23 further infringing films**

Of course, the scope of your client's infringement is dramatically different to that set out in our letter of claim. Details of the 23 additional films known to our client in respect of which your client



SOLICITORS

Nabarro & PETA Inc.
7 September 2010
Page 3

has copied, distributed and/or made available the Film Scenes/scenes from the Film are set out in our open letter of today.

**Damages**

You appear to consider that our client seeks worldwide relief and/or that it assumes that your client PETA (the UK charity) is responsible for acts occurring outside the UK. This is not correct. Our client appreciates that under English law in UK court proceedings it is entitled to damages only in respect of your client's infringement in the UK. The actions set out in our open letters are all infringements under English law.

You have also misunderstood the basis on which the BFI calculated the licence fee which it would charge your client in 2009. The BFI did not seek to charge the licence fee on its "All Media" rate because of activities outside of the UK. The BFI's evidence is that it would have charged your client for each film at its All Media rate of £7,800 per film even if the use only related to the site at www.peta.org.uk. The BFI naturally does not offer a UK-only licence in respect of a website which can be viewed worldwide. The rate which the BFI would have charged your client therefore does not differ based on whether the licence relates solely to www.peta.org.uk or to all of the other PETA websites around the world.

On the basis of the BFI rate, the licence fee for the 28 films is £218,400 plus interest.

However, our client's evidence is that it would have charged your client a significantly greater licence fee per film than the BFI All Media rate in respect of your client's exploitation of the Film Scenes on www.peta.org.uk. The reasons for this are as follows –

- Our client would have been very reluctant to grant a licence to your client/PETA Inc given Mr Schonfeld's well-publicised views about PETA and its sexualised efforts to attract publicity. In the circumstances, had it been prepared to grant a licence, it would have charged a substantial premium.

- The unique, shocking and internationally renowned nature of The Film Scenes (highlighted in the enclosed booklet) means that they are commercially the most valuable scenes in the Film (analogous in sports television with the knockout punches in highlights of boxing championships or the goals in a world cup);

- Our client was aware that your client encourages the viral dissemination of its promotional films which would mean a loss of control of the Film Scenes and over-exposure of one of most unique and shocking scenes in The Animals Film;

- Had our client been prepared to grant licences to your client, it would have granted licences for each individual film on a per minute or part thereof basis for an initial period of one year. It would have charged a licence fee based on industry rates for the licensing of comparable films for advertising purposes. One of our client's directors Jenifer Millstone has extensive experience of negotiating licences for the use of film clips for the BBC and is aware of industry practice and rates. Sony Picture Classics (which distributes independent films including top class documentaries comparable to *The Animals Film*) charges annual licence fees for film clips for advertising purposes on the following basis –

  (i) UK Internet US $25,000-50,000 (per minute with a one minute minimum),



Nabarro & PETA Inc.
7 September 2010
Page 4

SOLICITORS

(ii) Worldwide-Internet-US$50,000-$100,000 (per minute with a one minute minimum)

(iii) Broadcast US $150,000 - $250,000 (per minute with a one minute minimum)

Adopting the lower UK internet rate for these purposes, the licence fees for the 28 films for each year for UK use are $700,000. This equates to about £3 million over 6 years albeit that our client is likely to have agreed to a discount for subsequent years' use following the licence for the first year.

- Our client would also have charged a substantial premium in circumstances where no credit was given on the films/website (assuming that it was prepared to grant a licence at all in such circumstances).

**Interest**

You fail to mention interest in your letters. Our client is of course entitled to interest to reflect the fact that it has been deprived of the licence fees in question for periods varying from one year to eight years. Our client will seek interest on the damages from the Court. If for example our client were awarded ordinary damages of £300,000, the interest (at base rate plus 2%) for 6 years is £102,923.07.

**Additional damages**

You contend that there has been a history of negotiations between the parties as to rate. This is not a true reflection of the parties' dealings. The facts are as follows –

Our client found out that your client was exploiting the Film Scenes in one of its promotional films and asked your client for full disclosure of any scenes from The Animals Film in your client's films. PETA informed our client that there were only three films which featured the Film Scenes. Our client asked the BFI to assist. The BFI informed your client that it was prepared to grant a licence on the basis of £7,800 per film for the three films providing the license was taken up within a reasonable specified time frame. Your client did not agree to take the licence offered to it by this date but made a proposal in respect of the three films which was not accepted. Your client made no further attempt to contact the BFI or our client.

It is now clear that your client and PETA Inc concealed the extent of the infringement.

Furthermore, having failed to obtain a licence, your client should have immediately removed the films from the sites. However, not only did it fail to do so (or even add a credit), it in fact made available on its site a new film featuring the Film Scenes (*State of Union Undress 2010*). This film is particularly distasteful to our client.

Your client evidently decided to continue to exploit our client's copyright works despite having been notified of our client's rights and we assume (given your firm's involvement) being advised by your firm that it was infringing our client's copyright.

Your client evidently wished to continue to benefit from its use of the Film Scenes (which are unique and highly emotive clips) at key points of its more important films on the website in order to raise very substantial revenues and also did not wish to incur the costs of making the



SOLICITORS

Nabarro & PETA Inc.
7 September 2010
Page 5

necessary changes to the films and its website. In the circumstances your claim that your client was prepared to take a licence is disingenuous and irrelevant.

Furthermore your client and PETA Inc's conduct in revealing only 3 (one of which our client knew of) out of the 28 infringements of which it is now aware and deliberately concealing the extent of the infringement is astounding. Its exploitation of a new infringing film after being put on notice is equally flagrant.

It is clear from its most recent accounts that your client has raised very substantial revenues and that it does so as a direct result of its profile-raising activities including its use of shocking material in its promotional films. It is disingenuous to argue that there is no causal link between these revenues and the use of the Film Scenes.

Your client's actions show a cynical disregard for our client's copyright. An award of additional damages is therefore entirely appropriate.

**Our client's costs**

Our client's total costs to date (including this firm's fees and the success fee on the fees plus Counsel's fees and the success fee on Counsel's fees plus the ATE premium) are £75,000 (exclusive of VAT). This firm's fees are calculated on the basis of the time recorded by Mr Bailey (the partner with conduct of this matter, grade A, hourly rate of £325) and Mr Goodbody (assistant, grade C, hourly rate of £175).

If this matter proceeds to trial, our client's total costs are likely to exceed £250,000.

**Your client's total exposure**

Our client's claim for damages is very substantial. The Court is also likely to award a substantial sum in respect of additional damages.

For the reasons set out above your client's offer of £2,000 per film in respect of the exploitation in the UK is completely inappropriate and your client's offer of £8,000 in respect of four of the infringing films is rejected.

**Global position**

You refer in your letters to the need for our client to take separate action in respect of the infringements outside the UK. Our client is of course well aware of this. Indeed, in the absence of a global settlement, our client will (in addition to the UK proceedings) shortly commence proceedings against PETA Inc in the US in respect of its activities in the US. To this end it has retained US Counsel who has agreed to represent our client in respect of those proceedings without charge. PETA Inc will of course be aware of the very substantial statutory damages for copyright infringement in the US (and possible criminal sanctions for intentional infringement).

It appears from your without prejudice letter that your client would prefer to settle this matter globally. It is certainly in your client's interests to do so given the substantial quantum of the UK claim and the imminent US proceedings.



Forbes
anderson
free

SOLICITORS

Nabarro & PETA Inc.
7 September 2010
Page 6

We note that your client is prepared in principle to pay the sum of £7,800 per film (based on the BFI rate) for an perpetuity licence dealing with the past infringement and future use. This equates in respect of the 28 films to £218,400 plus interest.

This is not acceptable to our client as had your client sought a worldwide all media licence for the 28 films, our client would have charged a rate per film comparable to the global Sony Pictures rate. This would evidently have produced a significantly higher total licence fee than the BFI rate. Furthermore, the viral exploitation of the Film Scenes and the failure to include a credit on the Film Scenes has seriously damaged our client.

Our client nevertheless wishes to be reasonable and is prepared to compromise. It is therefore prepared to settle all of its claims against your client and PETA Inc (and all other PETA entities) (in respect of damages, additional damages and interest) and to grant an ongoing perpetual licence in respect of all uses of the Film Scenes in the 28 films by the various PETA organisations on the following basis –

- payment of the sum of £395,000 plus its costs (currently £75,000 in total including ATE premium) ie a total of £470,000 on acceptance of this offer;

- the addition of an agreed credit being superimposed on the Film Scenes and scenes from the Film in the 28 films (wherever included);

- agreement by your client and PETA Inc that if any further infringing films are discovered following the settlement (which were made and/or exploited prior to the settlement), they will pay within 14 days a sum equal to 1/28th of the agreed settlement sum in respect of each such additional infringing film to which they will superimpose the agreed credit on the Film Scenes or scenes from the Film (it being understood that this does not constitute a licence in respect of any new unauthorised use/exploitation of the Film Scenes/other scenes from the Film in the future, which would constitute a separate infringement).

This offer will remain open for 14 days. If the offer is not accepted within this period, our client will immediately issue the proceedings. Please note that one effect of the issue of proceedings will be substantially to increase the premium in relation to the ATE insurance.

Finally, we reserve the right to show this letter to the Court on the issue of costs.

Yours faithfully

FAF

**Forbes Anderson Free**
mbailey@forbesanderson.com

enc.

Claim No: HC10C0...

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

INTELLECTUAL PROPERTY

B E T W E E N:

BEYOND THE FRAME LIMITED

Claimant

and

(1) PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS (PETA) FOUNDATION

(a company limited by guarantee)

(2) PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS INC.

(a company incorporated under the laws of the state of Virginia in the United States of America)

(3) BRITISH FILM INSTITUTE

(a company incorporated by Royal Charter)

Defendants

***DRAFT***

PARTICULARS OF CLAIM

The Copyright Work, the Claimant, and its Title to it.

1. A film entitled "The Animals Film" ("the Film") was made in or around 1981.

2. A United States company called Slick Pics International Inc ("SPI") was the person by whom the arrangements necessary for the making of the Film were made, and was therefore the maker of the Film under s.13 of the Copyright Act 1956 ("the 1956 Act").

3. By article 3 and schedule 2 to the Copyright (International Conventions) Order 1979, made pursuant to the power in s.32 of the 1956 Act, parts 1 and 2 of the 1956 Act applied to bodies incorporated under the laws of the United States of America as they applied to bodies incorporated under the laws of the United Kingdom. SPI was therefore a qualified person during the whole or a substantial part of the period during which the Film was made.

1

4. The Film is a sequence of visual images recorded onto material so as to be capable, by the use of that material, of being shown as a moving picture and/or of being recorded onto other material by the use of which it can be shown.

5. Copyright subsists in the Film and has subsisted at all times since its making. SPI was the first owner of the copyright in the Film.

6. Mr Victor Schonfeld, the director, co-director or joint director of the Film, took assignment of the Film from SPI on 30 June 1982. A copy of that assignment is appended hereto as Annex 1.

7. On 13 April 2010, the Claimant, a company registered under the companies acts with company number 02778696, received assignment of all copyright in the Film and the right to bring proceedings and to claim damages and other available remedies in respect of any infringements of copyright in the Film prior to the date of that assignment. A copy of that assignment is appended hereto as Annex 2.

8. Mr Schonfeld is a director of and shareholder in the Claimant.

9. The Claimant is therefore the owner of the copyright in the Film and of the right to bring infringement proceedings, and to claim damages and any other remedies available to the copyright owner as a consequence of the acts of which complaint is made herein.

The Third Defendant

10. The Third Defendant is a company incorporated by Royal Charter. That Charter was granted on 19 July 1983. Its purpose is to encourage the development of the arts of film, television and the moving image throughout the United Kingdom. The Third Defendant holds a licence from the Claimant that, for the purposes of these proceedings, is accepted as being an exclusive licence, and would thus give the Third Defendant a concurrent right of action with the Claimant in respect of the acts of infringement about which complaint is made herein. The Third Defendant has indicated that it does not wish to be a Claimant in these proceedings, and so it is added as a defendant pursuant to s.102 of the Copyright Designs and Patents Act 1988 ("the 1988 Act"). No remedy is sought against it.

11. By reason of an agreement between the Claimant and the Third Defendant dated 15 July 2010, the Third Defendant has no entitlement to a share of any damages,

2

additional damages or any account of profits that arise as a consequence of the acts of infringement complained of herein.

The First and Second Defendants

12. The First Defendant is a company incorporated under the Companies Acts with company number 03135903. It is limited by guarantee. It is the UK emanation of a high profile organisation that campaigns on various animal rights issues. It is a registered charity with charity number 1056453.

13. The Second Defendant is another company in the high profile organisation mentioned in the previous paragraph. The Second Defendant is a company incorporated in the state of Virginia in the United States of America. It has charitable status in the state of Virginia, and its address is at 501 Front Street, Norfolk, VA, 235410, USA.

14. The First and/or Second Defendants have personally carried out the acts of which complaint is made herein, alternatively the First and Second Defendants have committed the acts of which complaint is made herein pursuant to a common design and/or the Second Defendant has authorised, directed, counselled and/or procured the conduct of those acts by the First Defendant so as to be jointly and severally liable for them. In particular, pending disclosure, further information, evidence and/or cross-examination, the Claimant relies on the following facts and matters:

    a. The First and Second Defendants have extremely similar names, from which it can be inferred that they are part of the same organisation.

    b. The Second Defendant states on its website at www.peta.org that it can be contacted in the UK by contacting the First Defendant.

    c. Ms Ingrid Newkirk, one of the charitable trustees of the First Defendant, is the president of the Second Defendant

    d. The UK Website defined in paragraph 18 below claims to be the website of the First Defendant, and gives the First Defendant's address to any persons wishing to make contact with the party responsible for it, yet the Second Defendant is the registrant of each of the URLs alleged to direct users to that website.

3

e. The link to the "TV" section of the UK Website links to a website at the URL www.petatv.com ("the PETA TV Website"), for which the Second Defendant is the registrant.

15. References below to the "Defendants" do not include the Third Defendant, but are references to the First and/or Second Defendants and each of them acting alone or acting with each other so as to be jointly and severally liable, as set out above.

<u>The Acts of Which Complaint is Made</u>

16. The Defendants have produced numerous films ("the PETA Films") in support of their campaigning activities, each of which includes footage from the Film that shows a commercial farming process in which beaks are removed from poultry ("the De-Beaking Scenes"); the loading of poultry into containers for transportation ("the Loading Scenes") and/or a pig with an electrode attached to its head ("the Electrode Scences"). These scenes are referred to together as "the Film Scenes". In particular, pending disclosure, further information, evidence and/or cross-examination, the Claimant relies on the following films:

   a. A film entitled 'Free Me', of which various versions have been produced, and which includes the De-Beaking Scenes as it begins;

   b. A film entitled 'Kentucky Fried Cruelty' of which various versions have been produced, and which includes the De-Beaking Scenes at various points;

   c. A film entitled 'Meet Your Meat' which includes the De-Beaking Scenes in a section entitled 'Egg-Laying Hens';

   d. A film entitled 'Chew on This' which includes the De-Beaking Scenes at its conclusion;

   e. A film entitled 'State of the Union Undress 2010' of which various versions have been produced, and which includes the De-Beaking Scenes immediately after the presenter of that film completes the removal of her clothes to be completely naked;

   f. A film entitled "A Cow at My Table" which includes 30 seconds of the De-Beaking Scenes beginning at approximately 3minutes 11 into the film;

4

g. A film entitled "Kosher Eggs" which includes the De-Beaking Scenes approximately 60% of the way through the film and which incorrectly attributes ownership of the De-Beaking Scenes to Animal Liberation Israel;

h. A film entitled "Nonviolence Includes Animals" which includes the De-Beaking Scenes approximately 80% of the way through the film;

i. A film entitled "Suffa of the Hilltop Hood Raps KFC" which includes the De-Beaking Scenes close to the start;

j. A film entitled "Dick Gregory Ad" which includes the De-Beaking Scenes close to the start;

k. A film entitled "Al Sharpton Preaches Compassion for Chickens" which includes the De-Beaking Scenes approximately 5-10% of the way through the film; includes the Loading Scenes approximately 15% of the way through the film; includes the De-Beaking Scenes again approximately 25% of the way through the film; includes the Loading Scenes again approximately 60% of the way through the film;

l. A film entitled "KFC Bea Arthur" that is different from the film entitled "Kentucky Fried Cruelty", which includes a version of the De-Beaking Scenes shown at an increased speed to create a false impression of the speed of the debeaking process;

m. A film entitled "KFC Exposed by Bea Arthur" which includes the Loading Scenes;

n. A film entitled "Kick it to KFC" and/or "Kick the KFC Bucket" which includes the De-Beaking Scenes approximately 30% of the way through the film;

o. A film entitled "Al Sharpton: 'KFC Tortures Animals'" which includes the De-Beaking Scenes approximately 15% of the way through the film and which incorrectly attributes ownership of rights in the De-Beaking Scenes to the Defendants' website at KentuckyFriedCruelty.com;

p. A film entitled "Bea Arthur KFC Ad – Short Version" which includes the De-Beaking Scenes approximately 30% of the way through the film;

q. A film entitled "Al Sharpton—30 Second Ad" which includes the De-Beaking Scenes approximately 30% of the way through the film;

r. A film entitled "Centurion's Ed Says, 'Go Vegetarian'" which includes the De-Beaking Scenes approximately 30% of the way through the film;

s. A film entitled "Dave Melillo" which includes the De-Beaking Scenes approximately 25% of the way through the film;

t. A film entitled "Go Betty Go's Aixa and Michelle" which includes the De-Beaking Scenes approximately 30% of the way through the film;

u. A film entitled "Mepkin Abbey Monastery: Hell for Chickens" which includes the De-Beaking Scenes approximately 60% of the way through the film and which incorrectly attributes ownership of the De-Beaking Scenes to Animal-TV.org";

v. A film entitled "Rise Against Video" which includes the Electrode Scenes approximately 45% of the way through the film;

w. A film entitled "Silverstein" which includes the De-Beaking Scenes approximately 45% of the way through the film;

x. A film entitled "The Sleeping's Doug Robinson" which includes the De-Beaking Scenes approximately 45% of the way through the film.

y. A film entitled "Everyone Wants to be Free" which includes the De-Beaking Scenes approximately 15% of the way through the film and which incorrectly attributes ownership of rights in the De-Beaking Scenes to the Defendants' website at GoVeg.com;

z. A film entitled "Colour Purple Author Takes on KFC" which includes the De-Beaking Scenes approximately 30% of the way through the film;

aa. A film entitled "Vampiro of the Jaguares" which includes the De-Beaking Scenes approximately 25 seconds into the film;

bb. A film entitled "If this is Kosher" which includes the De-Beaking Scenes approximately 15% of the way through the film;

17. The Film Scenes and each of them are a substantial part of the Film.

6

18. The Defendants have created and maintain or have authorised the creation and maintenance of a website ("the UK Website") at the URL www.peta.org.uk. Further, additional URLs for which the Second Defendant is the registrant, including at least "GoVeg.co.uk" and "KFCCruelty.co.uk", each direct users to the UK Website.

19. Since a date unknown to the Claimant but prior to June 2009, the Defendants have provided and continue to provide access to the PETA Films and each of them (save in the case of the State of the Union Undress 2010 film, to which access was provided prior to the date of issue of the claim form herein). That access has enabled the PETA Films to be:

   a. watched on the UK Website, the PETA TV Website and/or on other 'PETA' branded websites for which the Second Defendant is the registrant, in particular the website at the URL www.goveg.com,

   b. copied by downloading, and/or

   c. in relation to at least the "Meet your Meat" and "If this is Kosher" films, ordered for delivery to interested viewers on various forms of recorded media.

20. In the premises, the Defendants have, in each case without the licence of the copyright owner (i.e. at the relevant times, Mr Schonfeld or the Claimant):

   a. copied a substantial part of the Film,

   b. issued copies of a substantial part of the Film to the public, and/or

   c. made available to the public a substantial part of the Film by electronic transmission in such a way that members of the public may access it from a place and at a time individually chosen by them.

21. Further or alternatively, the Defendants have authorised others to do the acts set out in the preceding paragraph, in particular by:

   a. placing and/or authorising others to place copies of the PETA Films on the video sharing website www.youtube.com ("You Tube"), in particular on the You Tube 'Channel' named 'Peta Europe' which was created and is maintained by or with the authorisation of the Defendants, thereby authorising the party or parties in control of You Tube to copy and to make the Film Scenes available to the public by electronic transmission in such a way that

7

     members of the public may access those Film Scenes from a place and at a time individually chosen by them, and/or

  b. permitting the PETA Films to be viewed from within various websites, including in particular the UK Website, the PETA TV Website, and You Tube, thereby authorising, as a consequence of the internal operation of the viewer's computer, the creation of copies of the PETA Films on that viewer's computer,

  c. authorising others to download the PETA Films and thus make copies of the Film Scenes,

  d. authorising others to embed the PETA Films in their own websites such that the Defendants have authorised those others to make the Film Scenes available to the public by electronic transmission in such a way that members of the public may access those Film Scenes from a place and at a time individually chosen by them.

22. The Defendants have thereby infringed copyright in the Film pursuant to sections 16, 17 and 20 of the 1988 Act.

23. By reason of the matters aforesaid, the Claimant has suffered loss and damage.

24. Further, the Defendants' aforesaid acts of infringement have been flagrant and have unjustly benefited it. Accordingly, the Claimant is entitled to and claims additional damages pursuant to section 97(2) of the Copyright Designs and Patents Act 1988.

## PARTICULARS OF FLAGRANCY/UNJUST BENEFIT AND/OR REASONS FOR THE AWARD OF ADDITIONAL DAMAGES

  a. By reason of the Second Defendant's purchase of 500 copies of the Film on DVD from Mr Schonfeld in or around June 2007 with the intention of onward sale of those copies, the Defendants are well aware that copyright subsisted in the Film and that it was (at that time) owned by Mr Schonfeld.

  b. In June 2009 the Defendants were formally put on notice of the Claimant's rights in the Film by virtue of communications between an employee or agent of the Claimant, Mr Simon Cooper, and the Second Defendant's employee or agent, who occupied a legal advisory position under the title "Corporate Counsel", Ms Paula Hough.

8

c. Despite this formal notification, the Defendants thereafter continued their infringing acts and created at least one further film (that entitled 'State of the Nation Undress 2010') that included the Film Scenes.

d. Following enquiries in relation to the extent of their usage of the Film Scenes being made of the Defendants, the Defendants in their email of 10 June 2009 materially understated their use of the Film Scenes by identifying only 3 of the 28 uses particularised above.

e. In some uses of the De-Beaking Scenes, the Defendants have incorrectly attributed ownership of rights in the those scenes, including attributing ownership to their own websites at the URLs KentuckyFriedCruelty.com and goveg.com in order to promote those websites.

f. In all the circumstances the Defendants have shown a flagrant disregard for the rights of the copyright owner.

g. The Defendants receives very substantial sums of money in donations which are attracted in part by its use of the PETA Films and by the powerful imagery of the Film Scenes.

h. Mr Schonfeld is an outspoken critic of the Defendants' sexualised efforts to attract publicity. As a consequence, the Defendants' use of the Film Scenes (given Mr Schonfeld's role in the creation of the Film, as the former owner of the copyright in it, and as the individual in control of the Claimant) taints him and the Claimant with hypocrisy.

25. Unless restrained by this Honourable Court, the Defendants threaten and intend to continue the acts complained of herein whereby the Claimant will suffer further loss and damage.

26. The Claimant is entitled to and claims interest under s.35A of the Senior Courts Act 1981 and/or under the inherent jurisdiction of the Court at such rate and for such period as to this Honourable Court seem fit.

27. The Claimant does not know of all the instances of copyright infringement performed by the Defendants. The Claimant anticipates further instances of copyright infringement and/or indicia of flagrancy and/or unjust benefit and/or other reasons for

9

the award of additional damages will be revealed in the course of disclosure, and seeks relief for all such breaches or infringements and on the basis of all such indicia.

AND THE CLAIMANT CLAIMS:

(1) An injunction to restrain the First and Second Defendants and each of them, whether acting by their directors, officers, employees, servants or agents or any of them or otherwise howsoever from doing the following acts or any of them, that is to say:

    a.  Copying the Film Scenes or any of them;

    b.  Issuing copies of the Film Scenes or any of them to the Public;

    c.  Making copies of the Film Scenes or any of them available to the public by electronic transmission in such a way that members of the public may access those Film Scenes or any of them from a place and at a time individually chosen by them;

    d.  otherwise infringing the Claimant's copyright in the Film;

    e.  causing, procuring or authorising any other person, firm or company to do any of the aforesaid acts.

(2) An order that the First and Second Defendants or either of them pay the Claimant's costs of taking appropriate measures for the dissemination of information concerning the judgment.

(3) An order for delivery up or, at the First and Second Defendants' option and on oath, destruction or modification by the removal of the Film Scenes and each of them from any all materials in the power possession custody or control of the First and Second Defendants or either of them (including for the avoidance of doubt any copy of any of the PETA Films over which the First and Second Defendants or either of them have control on third party websites) which are infringing copies of the Film.

(4) An inquiry as to damages suffered by the Claimant by reason of the aforesaid acts of infringement.

(5) Additional Damages.

(6) Alternatively to (4) and (5), above, and at the Claimant's option, an account of profits accrued to the First and Second Defendants and each of them by reason of the aforesaid acts of infringement.

(7) Interest under s.35A of the Senior Courts Act 1981 and/or under the inherent jurisdiction of the Court at such rate and for such period as to this Honourable Court seem fit.

(8) Costs

(9) Further or other relief.

THOMAS ST QUINTIN

The Claimant believes that the facts stated in these Particulars of Claim are true.

I am duly authorised by the Claimant to sign this statement.

Full Name _____

Name of Claimants' solicitors firm _____

Signed _____ Position or office held _____

(Claimant's Solicitor)

11

Claim No: HC10C0...

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

INTELLECTUAL PROPERTY

B E T W E E N:

BEYOND THE FRAME LIMITED

Claimant

and

(1) PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS (PETA)
FOUNDATION

(a company limited by guarantee)

(2) PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS INC.

(a company incorporated under the laws of
the state of Virginia in the United States of
America)

(3) BRITISH FILM INSTITUTE

(a company incorporated by Royal
Charter)

Defendant

---

***DRAFT*** PARTICULARS OF CLAIM

---

Messrs Forbes Anderson Free

60 Charlotte Street

London

W1T 2NU

Fax: 020 7291 3511

Tel: 020 7291 3500

REF:MB/B1054-001

SOLICITORS FOR THE CLAIMANT

12

# EXHIBIT B



**Forbes
anderson
free**

SOLICITORS

Our Ref:     MB/B1054-001/corr/024
Your Ref:    MEC/JBR/P1420.32

14 September 2010

Nabarro
Lacon House
Theobald's Road
London WCIX 8RW

Attn: Jonathan Radcliffe

**By post and by email to j.radcliffe@nabarro.com**

**And to**

PETA Inc
501 Front St
Norfolk
VA 23510
USA

Attn. Ingrid Newkirk and Paula Hough

**By post and by email to ingridn@peta.org and to phough@petaf.org**

Dear Sirs

**"The Animals Film" – Beyond the Frame Limited**

We refer to our letter of 7 September 2010.

Our client has learned of a further infringement of its copyright in The Animals Film. Several seconds of the Film Scenes ie the De-Beaking scenes have been prominently included in the documentary feature film about Ms Ingrid Newkirk and PETA made and released by HBO entitled "*I am an Animal; the Story of Ingrid Newkirk and PETA*" (c) 2007.

This film has been exploited in the UK and internationally. It was first broadcast on television on HBO in the US on 10 November 2007 and has been broadcast on television in various other countries in Europe and Australasia, shown in film festivals and has been released on DVD both by HBO and PETA internationally. The DVD of the film can be purchased in the UK from the PETA website.

We assume that PETA Inc provided the footage of the Film Scenes to HBO and that Ms. Newkirk authorised the exploitation of the Film Scenes in the film by HBO given she must have authorised the placement of her voice-over statement over the Film Scenes attributing the creation of the Film Scenes to PETA.

60 Charlotte Street   London   W1T 2NU   T +44 (0)20 7291 3500   F +44 (0)20 7291 3511

Partners   Andrew Forbes   Dominic Free   Martyn Bailey   George Festing
Consultant   Fiona Anderson
Regulated by the Solicitors Regulation Authority
The number under which the firm is recognised by the Solicitors Regulation Authority is 00350235
Forbes Anderson Free does not accept service of proceedings or any other documents or notices by email



SOLICITORS

Nabarro and PETA Inc.
14 September 2010
Page 2

This constitutes an infringement of copyright by both your client and PETA Inc and HBO which has caused our client loss.

Our client is particularly shocked by this infringement given that Paula Hough, PETA's in house Counsel, gave our client her assurance in an email in June 2009 that PETA had not given the Film Scenes to any filmmakers or broadcasters.

We require your client's proposals in respect of this film in addition to the undertakings set out in our previous letters.

In the event of a failure or refusal to provide the undertakings and proposals by 21 September 2010, our client will immediately issue proceedings against your client and PETA Inc.

In the meantime our client's rights are reserved.

Yours faithfully

**Forbes Anderson Free**
mbailey@forbesanderson.com

# EXHIBIT C



SOLICITORS

Our Ref: MB/B1054-001/corr/025
Your Ref: MEC/JBR/P1420.32

14 September 2010

Nabarro
Lacon House
Theobald's Road
London WCIX 8RW

Attn: Jonathan Radcliffe

**By post and by email to j.radcliffe@nabarro.com**

**And to**

PETA Inc
501 Front St
Norfolk
VA 23510
USA

Attn. Ingrid Newkirk and Paula Hough

**By post and by email to Ingridn@peta.org and to phough@petaf.org**

**Without Prejudice**
**Save As To Costs**

Dear Sirs

**"The Animals Film" – Beyond the Frame Limited**

We refer to our open letter of today and to our without prejudice save as to costs letter of 7 September 2010.

The HBO film will form part of the UK proceedings, but especially impacts on the proposed US proceedings. As well as being an infringement of copyright in the US, our client understands it to constitute an infringement of our client's rights under the US law of unfair competition as the Film Scenes are clearly presented as the product of PETA's covert investigations (Ms Newkirk's voice-over during the Film Scenes stating that *"No-one is going to go behind the scenes, who would want to go into these ugly places"*) and our client and its film received no credit on the HBO film.

This further serious infringement of our client's rights gives our client a claim for substantial damages (which are greater than the damages for the other individual infringements).

60 Charlotte Street London W1T 2NU T +44 (0)20 7291 3500 F +44 (0)20 7291 3511

Partners Andrew Forbes Dominic Free Martyn Bailey George Festing
Consultant Fiona Anderson

Regulated by the Solicitors Regulation Authority

The number under which the firm is recognised by the Solicitors Regulation Authority is 00350235

Forbes Anderson Free does not accept service of proceedings or any other documents or notices by email



Forbes
anderson
Free

Nabarro and PETA Inc.
14 September 2010
Page 2

SOLICITORS

Nevertheless, our client wishes to be reasonable and remains prepared to settle all of its claims globally for £395,000 plus one twenty eighth of £395,000 for this additional infringement plus its costs (on the basis that the credit is also added to the Film Scenes in the HBO film).

If this proposal is not accepted, our client's claim in respect of the HBO film will form part of the US proceedings and our client also reserves its right to pursue the matter with the US broadcast regulators, to publicise the misattribution/infringement and to demand the immediate cessation of distribution of the HBO film in its present form.

As you are aware our client's offer remains open for acceptance until 21 September 2010.

Yours faithfully

**Forbes Anderson Free**
mbailey@forbesanderson.com

# EXHIBIT D



SOLICITORS

Our Ref:     MB/B1054-001/corr/026
Your Ref:    MEC/JBR/P1420.32

22 September 2010

Nabarro
Lacon House
Theobald's Road
London WC1X 8RW

Attn: Jonathan Radcliffe

**By post and by email to j.radcliffe@nabarro.com**

**And to**

PETA Inc
501 Front St
Norfolk
VA 23510
USA

Att: Ingrid Newkirk and Paula Hough

**By post and by email to Ingridn@peta.org and to phough@petaf.org**

Dear Sirs

**"The Animals Film" – Beyond the Frame Limited**

We refer to the letter from Nabarro of 20 September 2010.

Firstly, you have again failed to confirm if you are acting for PETA Inc thereby generating further costs that might have been avoided.

Secondly, you have completely failed to acknowledge the contents of our letters of 7 and 14 September and the additional infringements.

Our client is frankly amazed by your comment that your client has always said throughout this dispute that it will take a licence of the relevant film scenes. The facts are that since notification of our client's rights, your client and PETA Inc have not only continued to infringe our client's rights, they have also concealed from our client at least 27 separate additional infringements when confirming the extent of the use of our client's copyright work.

In any event our client has not asked your client and PETA Inc to take a licence – it has asked them immediately to cease exploitation of its copyright and to provide proposals for compensation and undertakings.

60 Charlotte Street   London   W1T 2NU   T +44 (0)20 7291 3500   F +44 (0)20 7291 3511

Partners   Andrew Forbes   Dominic Free   Martyn Bailey   George Festing
Consultant   Fiona Anderson
Regulated by the Solicitors Regulation Authority
The number under which the firm is recognised by the Solicitors Regulation Authority is 00350235
Forbes Anderson Free does not accept service of proceedings or any other documents or notices by email



Forbes
anderson
Free

SOLICITORS

Nabarro and PETA Inc.
22 September 2010
Page 2

**Further infringements**

Each time that our client undertakes some further research, it discovers further infringements. In this regard please note the following –

- Our client has recently ordered, paid for and received from PETA a DVD entitled ANIMALS ARE NOT OURS TO EAT which includes a number of the infringing PETA films on DVD in addition to those of which our client was aware, including *Pam Anderson Takes on KFC, Chew on This The Rev Al Sharpton Preaches Compassion for Chickens, Al Sharpton–30 Second Ad* and *Everyone Wants to be Free.*

- Our client understands that your client and/or PETA Inc have provided footage of - and given permission to exploit without restriction - scenes from the Film to two third party producers (in addition to HBO). The details are –

    (i)   *Earthlings,* an independently produced feature documentary, which includes four scenes from The Animals Film (10 seconds of the De-Beaking Scene, 3 to 4 seconds each of the Addiction Scene, the Lab Conditions Scene, and the Electrode Scene). It has been widely exploited including in the UK.

    (ii)  *A Cow at My Table,* an independently produced feature documentary concerning animal agriculture, which includes 30 seconds of the De-Beaking Scene in one version of that film and additionally the Loading Scene and a scene of caged pigs exhibiting stereotypic behaviour (the Caged Pigs scene) in another version. It has been widely exploited including in the UK and on the PETA site.

The licensing of our client's copyright work to third parties in this way represent further infringements of our client's copyright in respect of which our client will seek damages in the proceedings against your client and PETA Inc.

**Mediation**

In our letter of 7 September 2010, we asked your client and PETA Inc to provide details of additional infringements, undertakings and proposals for compensation within 14 days.

In response your client has made no comment on the 25 additional infringements detailed in those letters but has proposed mediation (it appears that PETA Inc is not to be included in this).

Taking this at face value, our client has considered mediation with us and has concluded that it is not appropriate at this stage for the following reasons -

    (i)   This is a straightforward copyright infringement claim which does not have issues of law and fact which need to be resolved, and as such we are primarily concerned with quantum. This matter is not therefore susceptible to mediation and the substantial costs of a mediator are simply not justified.

    (ii)  Our client has quite recently made a without prejudice settlement proposal (in respect of which our client does not waive privilege) to which your client and



**Forbes**
**anderson**
**Free**

SOLICITORS

Nabarro and PETA Inc.
22 September 2010
Page 3

PETA Inc have failed to respond.  A proposal of compensation (whether on an open or a without prejudice basis) by your client or PETA Inc would have made it much clearer if a without prejudice meeting or mediation was likely to be useful.

(iii)    Given your client's repeated and ongoing failure to provide details of the scope of the infringement, and in light of the emails from PETA's in-house Counsel Paula Hough to our client of 10 June 2009 in which Ms Hough falsely asserted that PETA's infringing uses of The Animals Film were restricted to three PETA films only and did not involve third party filmmakers or broadcasters, it is evident that proceedings are necessary in order to determine the extent of the infringement.  A mediation is not appropriate prior to disclosure by your client and PETA Inc.

(iv)    In the circumstances a mediation at this stage has negligible chance of success and is likely simply to result in additional costs and delay which will of course cause our client further damage given the ongoing infringements.

**Proceedings**

Our client first notified your client of its rights about a year ago. Since our letter of claim in May 2010 our client has forborne from issuing proceedings and has given your client every opportunity to make proposals for compensation. Our client has been more than reasonable but its patience is now exhausted.

Given the failure of your client and PETA to provide the undertakings and proposals, our client will now issue the proceedings against your client and PETA Inc without further reference to you or PETA Inc.

The fact that Nabarro and PETA Inc have again failed to confirm if Nabarro is instructed to accept service of proceedings on behalf of PETA Inc means that our client will be forced to incur the costs of obtaining leave to serve the proceedings on PETA Inc which our client will seek to recover from PETA Inc.

In the meantime our client's rights remain reserved.

Yours faithfully

$FAF$

**Forbes Anderson Free**
mbailey@forbesanderson.com

# EXHIBIT E



SOLICITORS

# Fax

| To | : | Jonathan Radcliffe | From | : | Martyn Bailey |
|---|---|---|---|---|---|
| At | : | Nabarro | Ref | : | MB/ES/B1054-001/corr/029 |
| Ref | : | EC/JBR/P1420.32 | Date | : | 24 September 2010 |
| Fax no | : | 020 7524 6524 | Pages | : | 22 (Inc this) |

### Privacy And Confidentiality Notice
The information contained in this fax is for the use of the named recipient only.
This fax is confidential and may contain information which is subject to legal professional privilege.
If you receive this fax in error please contact us immediately and destroy the faxed pages received without
making or retaining any copies.

Please see the attached.

60 Charlotte Street London W1T 2NU T +44 (0)20 7291 3500 F +44 (0)20 7291 3511
Partners Andrew Forbes Dominic Free Martyn Bailey George Festing
Consultant Fiona Anderson
Regulated by the Solicitors Regulation Authority
The number under which the firm is recognised by the Solicitors Regulation Authority is 00350235
Forbes Anderson Free does not accept service of proceedings or any other documents or notices by email

24/09 2010 16:27 FAX 02072913511     FORBES ANDERSON FREE                    ☑002/022



Forbes
anderson
free

SOLICITORS

Our Ref:     MB/ES/B1054-001/corr/027
Your Ref:    EC/JBR/P1420.32

24 September 2010

Nabarro
Lacon House
Theobald's Road
London
WCIX 6RW

Attn: Jonathan Radcliffe

**By post & fax to 020 7524 6524**

Dear Sirs

**"The Animals Film" – Beyond the Frame Limited**

We enclose by way of service the Claim Form and Particulars of Claim issued today together with a Response Pack. Please acknowledge receipt.

Yours faithfully

**Forbes Anderson Free**
mbailey@forbesanderson.com
esagir@forbesanderson.com

60 Charlotte Street  London  W1T 2NU   T +44 (0)20 7291 3500   F +44 (0)20 7291 3511

Partners  Andrew Forbes  Dominic Free  Martyn Bailey  George Festing
Consultant  Fiona Anderson
Regulated by the Solicitors Regulation Authority
The number under which the firm is recognised by the Solicitors Regulation Authority is 00360285
Forbes Anderson Free does not accept service of proceedings or any other documents or notices by email

24/09 2010 16:27 FAX 02072913511          FORBES ANDERSON FREE                     ☑ 003/022



| In the | HIGH COURT OF JUSTICE CHANCERY DIVISION INTELLECTUAL PROPERTY |
|---|---|
| | *for court use only* |
| Claim No. | HC10C03044 |
| Issue date | 24 SEPT 2010 |

**Claimant**

BEYOND THE FRAME LIMITED
Roxburghe House
237-287 Regent Street
London
W1B 2HA

**Defendant(s)**

1) People for the Ethical Treatment of Animals (PETA) Foundation, Lacon House, Theobalds Road, London WC1X 8RW

2) People for the Ethical Treatment of Animals INC, 501 Front Street, Norfolk, VA 235410, USA

3) British Film Institute, 21 Stephen Street, London W1T 1LN

**Brief details of claim**

The Claimant claims damages for flagrant infringement by the First Defendant and the Second Defendant of the Claimant's copyright in a film, from which the First Defendant and the Second Defendant have unjustly benefitted, pursuant to ss.16,17,20 and 97(2) of the Copyright, Designs and Patents Act 1988. Further, the Claimant claims interest pursuant to s.35A of the Senior Courts Act 1981, costs and further or other relief, including an injunction to prevent further infringements by the First and the Second Defendants.

**Value**

The Claimant expects to recover in excess of £300,000

**Not for service out of the jurisdiction**

| (AS ABOVE) | Amount claimed | Unspecified |
|---|---|---|
| | Court fee | £1,930.00 |
| | Solicitor's costs | N/A |
| | Total amount | |

The court office at   ROYAL COURTS OF JUSTICE, STRAND, LONDON, WC2A 2LL
is open between 10 am and 4 pm Monday to Friday. When corresponding with the court, please address forms or letters to the Court Manager and quote the claim number.
N1 Claim form (CPR Part 7) (01.02)                                               *Printed on behalf of The Court Service*

| Claim No. | |
|---|---|

Does, or will, your claim include any issues under the Human Rights Act 1998?    ☐ Yes    ☑ No

Particulars of Claim (attached)(to follow)

---

**Statement of Truth**

*(I believe)(The Claimant believes) that the facts stated in these particulars of claim are true.

* I am duly authorised by the claimant to sign this statement

Full name *Victor Schonfeld*

Name of claimant's solicitor's firm *Forbes Anderson Free*

Signed *[signature]*     position or office held *Director*

*(Claimant)(Litigation friend)(Claimant's solicitor)      (if signing on behalf of firm or company)

*delete as appropriate

**FORBES ANDERSON FREE**
**60 CHARLOTTE STREET**
**LONDON W1T 2NU**

TEL:   020 7291 3500
FAX:   020 7291 3511
EMAIL: mbailey@forbesanderson.com
REF:   MB/B1054-001

Claimant's or claimant's solicitor's address to which documents or payments should be sent if different from overleaf including (if appropriate) details of DX, fax or e-mail.

Claim No:

IN THE HIGH COURT OF JUSTICE
CHANCERY DIVISION
INTELLECTUAL PROPERTY

BETWEEN:

## BEYOND THE FRAME LIMITED

Claimant

- and -

## 1) PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS (PETA) FOUNDATION
(a company limited by guarantee)

## 2) PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS INC.
(a company incorporated under the laws of the state of Virginia in the United States of America)

## 3) BRITISH FILM INSTITUTE
(a company incorporated by Royal Charter)

Defendants

## PARTICULARS OF CLAIM

### The Copyright Work, the Claimant, and its Title to it.

1. A film entitled "The Animals Film" ("the Film") was made in or around 1981.

2. A United States company called Slick Pics International Inc ("SPI") was the person by whom the arrangements necessary for the making of the Film were made, and was therefore the maker of the Film under s.13 of the Copyright Act 1956 ("the 1956 Act").

3. By article 3 and schedule 2 to the Copyright (International Conventions) Order 1979, made pursuant to the power in s.32 of the 1956 Act, parts 1 and 2 of the 1956 Act applied to bodies incorporated under the laws of the United States of America as they applied to bodies incorporated under the laws of the United Kingdom. SPI was therefore

1

a qualified person during the whole or a substantial part of the period during which the Film was made.

4. The Film is a sequence of visual images recorded onto material so as to be capable, by the use of that material, of being shown as a moving picture and/or of being recorded onto other material by the use of which it can be shown.

5. Copyright subsists in the Film and has subsisted at all times since its making. SPI was the first owner of the copyright in the Film.

6. Mr Victor Schonfeld, the director, co-director or joint director of the Film, took assignment of the copyright in the Film from SPI on 30 June 1982. A copy of that assignment is appended hereto as Annex 1.

7. On 13 April 2010, the Claimant, a company registered under the companies acts with company number 02778696, received assignment of all copyright in the Film and the right to bring proceedings and to claim damages and other available remedies in respect of any infringements of copyright in the Film prior to the date of that assignment. A copy of that assignment is appended hereto as Annex 2.

8. Mr Schonfeld is one of two directors and shareholders in the Claimant.

9. The Claimant is therefore the owner of the copyright in the Film and of the right to bring infringement proceedings, and to claim damages and any other remedies available to the copyright owner as a consequence of the acts of which complaint is made herein.

## The Third Defendant

10. The Third Defendant is a company incorporated by Royal Charter. That Charter was granted on 19 July 1983. Its purpose is to encourage the development of the arts of film, television and the moving image throughout the United Kingdom. The Third Defendant holds a licence from the Claimant that, for the purposes of these proceedings, is accepted as being an exclusive licence, and would thus give the Third Defendant a concurrent right of action with the Claimant in respect of the acts of infringement about which complaint is made herein. The Third Defendant has indicated that it does not wish to be a Claimant in these proceedings, and so it is added as a defendant pursuant to

2

s.102 of the Copyright Designs and Patents Act 1988 ("the 1988 Act"). No remedy is sought against it.

11. By reason of an agreement between the Claimant and the Third Defendant dated 15 July 2010, the Third Defendant has no entitlement to a share of any damages, additional damages or any account of profits that arise as a consequence of the acts of infringement complained of herein.

## The First and Second Defendants

12. The First Defendant is a company incorporated under the Companies Acts with company number 03135903. It is limited by guarantee. It is the UK emanation of a high profile organisation that campaigns on various animal rights issues. It is a registered charity with charity number 1056453.

13. The Second Defendant is another company in the high profile organisation mentioned in the previous paragraph. The Second Defendant is a company incorporated in the state of Virginia in the United States of America. It has charitable status in the state of Virginia, and its address is at 501 Front Street, Norfolk, VA, 235410, USA.

14. The First and/or Second Defendants have personally carried out the acts of which complaint is made herein, alternatively the First and Second Defendants have committed the acts of which complaint is made herein pursuant to a common design and/or the Second Defendant has authorised, directed, counselled and/or procured the conduct of those acts by the First Defendant so as to be jointly and severally liable for them. In particular, pending disclosure, further information, evidence and/or cross-examination, the Claimant relies on the following facts and matters:

    a. The First and Second Defendants have extremely similar names, from which it can be inferred that they are part of the same organisation.

    b. The Second Defendant states on its website at www.peta.org that it can be contacted in the UK by contacting the First Defendant.

    c. Ms Ingrid Newkirk, one of the charitable trustees of the First Defendant, is the president of the Second Defendant

    d. The UK Website defined in paragraph 18 below claims to be the website of the First Defendant, and gives the First Defendant's address to any persons wishing

3

to make contact with the party responsible for it, yet the Second Defendant is the registrant of each of the URLs alleged to direct users to that website.

e. The link to the "TV" page of the UK Website links to a website at the URL www.petatv.com, for which the Second Defendant is the registrant.

15. References below to the "Defendants" do not include the Third Defendant, but are references to the First and/or Second Defendants and each of them acting alone or acting with each other so as to be jointly and severally liable, as set out above.

## The Acts of Which Complaint is Made

16. The Defendants have created numerous films ("the PETA Films") in support of their campaigning activities, each of which includes footage from the Film that shows a commercial farming process in which beaks are removed from chicks ("the De-Beaking Scenes") and/or the loading of poultry into containers for transportation ("the Loading Scenes") and/or a pig with an electrode attached to its head ("the Electrode Scenes") and/or scenes of a cat inside a laboratory ("the Lab Conditions Scenes") and/or scenes of a primate with a metal device attached to his back ("the Addiction Scenes") and/or scenes of pigs confined in intensive farming pens ("the Confinement Scenes"). These scenes are referred to together as "the Film Scenes". In particular, pending disclosure, further information, evidence and/or cross-examination, the Claimant relies on the following films:

   a. A film entitled 'Free Me', of which various versions have been produced, and which includes the De-Beaking Scenes as it begins;

   b. A film entitled 'Kentucky Fried Cruelty' of which various versions have been produced, and which includes the De-Beaking Scenes at various points;

   c. A film entitled 'Meat Your Meat' which includes the De-Beaking Scenes in a section entitled 'Egg-Laying Hens';

   d. A film entitled 'Chew on This' which includes the De-Beaking Scenes at its conclusion;

   e. A film entitled '2010 State of the Union Undress' of which various versions have been produced, and which includes the De-Beaking Scenes immediately after the presenter of that film completes the removal of her clothes to be completely naked;

4

f.  A film entitled "Kosher Eggs" which includes the De-Beaking Scenes approximately 60% of the way through the film and which incorrectly attributes ownership of the De-Beaking Scenes to Animal Liberation Israel;

g.  A film entitled "Nonviolence Includes Animals" which includes the De-Beaking Scenes approximately 80% of the way through the film;

h.  A film entitled "Suffs of the Hilltop Hood Raps KFC" which includes the De-Beaking Scenes close to the start;

i.  A film entitled "Dick Gregory Ad" which includes the De-Beaking Scenes close to the start;

j.  A film entitled "Al Sharpton Preaches Compassion for Chickens" which includes the De-Beaking Scenes approximately 5-10% of the way through the film; includes the Loading Scenes approximately 15% of the way through the film; includes the De-Beaking Scenes again approximately 25% of the way through the film; includes the Loading Scenes again approximately 60% of the way through the film;

k.  A film entitled "KFC Bea Arthur" that is different from the film entitled "Kentucky Fried Cruelty", which includes a version of the De-Beaking Scenes shown at an increased speed to create a false impression of the speed of the debeaking process;

l.  A film entitled "KFC Exposed by Bea Arthur" which includes the Loading Scenes;

m.  A film entitled "Kick it to KFC" and/or "Kick the KFC Bucket" which includes the De-Beaking Scenes approximately 30% of the way through the film;

n.  A film entitled "Al Sharpton: 'KFC Tortures Animals'" which includes the De-Beaking Scenes approximately 15% of the way through the film and which incorrectly attributes ownership of rights in the De-Beaking Scenes to the Defendants' website at KentuckyFriedCruelty.com;

o.  A film entitled "Bea Arthur KFC Ad – Short Version" which includes the De-Beaking Scenes approximately 30% of the way through the film;

p.  A film entitled "Al Sharpton—30 Second Ad" which includes the De-Beaking Scenes approximately 30% of the way through the film;

q.  A film entitled "Centurion's Ed Says, 'Go Vegetarian'" which includes the De-Beaking Scenes approximately 30% of the way through the film;

r.  A film entitled "Dave Melillo" which includes the De-Beaking Scenes approximately 25% of the way through the film;

5

s. A film entitled "Go Betty Go's Aixa and Michelle" which includes the De-Beaking Scenes approximately 30% of the way through the film;

t. A film entitled "Mepkin Abbey Monastery: Hell for Chickens" which includes the De-Beaking Scenes approximately 60% of the way through the film and which incorrectly attributes ownership of the De-Beaking Scenes to Animal-TV.org";

u. A film entitled "Rise Against Video" which includes the Electrode Scenes approximately 45% of the way through the film;

v. A film entitled "Silverstein" which includes the De-Beaking Scenes approximately 45% of the way through the film;

w. A film entitled "The Sleeping's Doug Robinson" which includes the De-Beaking Scenes approximately 45% of the way through the film.

x. A film entitled "Everyone Wants to be Free" which includes the De-Beaking Scenes approximately 15% of the way through the film and which incorrectly attributes ownership of rights in the De-Beaking Scenes to the Defendants' website at GoVeg.com;

y. A film entitled "Colour Purple Author Takes on KFC" which includes the De-Beaking Scenes approximately 30% of the way through the film;

z. A film entitled "Vampiro of the Jaguares" which includes the De-Beaking Scenes approximately 25 seconds into the film;

aa. A film entitled "If this is Kosher" which includes the De-Beaking Scenes approximately 15% of the way through the film;

17. The Film Scenes and each of them are a substantial part of the Film.

18. The Defendants have created and maintain or have authorised the creation and maintenance of a website ("the UK Website") at the URL www.peta.org.uk. Further, the URLs "GoVeg.co.uk" and "KFCCruelty.co.uk" each direct users to the UK Website.

19. Since a date unknown to the Claimant but prior to the date of issue of the claim form herein, the Defendants have provided and continue to provide access to the PETA Films and each of them. That access has enabled the PETA Films to be:

   a. watched on the UK Website and/or on other 'PETA' branded websites, in particular the websites at the URLs www.goveg.com and www.petatv.com ("the PETA TV Website") to which a viewer is redirected from the UK Website,

6

    b.  copied by downloading, and/or

    c.  In relation to at least the following PETA Films, ordered for delivery to interested viewers on various forms of recorded media:

         i.    Meet Your Meat

        ii.    If this is Kosher

        iii.   Nonviolence includes Animals

        iv.   Pam Anderson takes on KFC (aka Kentucky Fried Cruelty)

        v.    Everyone Wants to be Free

        vi.   Chew on This

        vii.   The Rev Al Sharpton Preaches Compassion for Chickens

        viii.  Al Sharpton – 30 Sec Ad

20. Further, the Defendants have authorised third parties to use the Film and/or the Film Scenes or each or any of them in the creation of further films ("the Third Party Films"). In particular, pending disclosure, further information, evidence and/or cross-examination, the Claimant relies on the grant of licences to the creators of the following films:

    a.  A film entitled "Earthlings", which includes the De-Beaking Scenes, the Pig Confinement Scene, the Addiction Scenes and the Lab Conditions Scenes;

    b.  A film entitled "A Cow at My Table", which includes 30 seconds of the De-Beaking Scenes and several seconds of the Loading Scenes

    c.  A film entitled "I am an Animal: The Story of Ingrid Newkirk and PETA" which includes the De-Beaking Scenes approximately 13 minutes into the Film.

21. "Earthlings" and "I am an Animal: The Story of Ingrid Newkirk and PETA" are available for purchase on the UK Website for delivery to addresses in the UK. A short version of "A Cow At My Table" (including 30 Seconds of the De-Beaking Scenes) can be watched on the UK Website and copied by downloading.

22. In the premises, the Defendants have, in each case without the licence of the copyright owner (i.e. at the relevant times, Mr Schonfeld or the Claimant):

    a.  copied a substantial part of the Film,

    b.  issued copies of a substantial part of the Film to the public, and/or

    c.  made available to the public a substantial part of the Film by electronic transmission in such a way that members of the public may access it from a place and at a time individually chosen by them.

7

23. Further or alternatively, the Defendants have authorised others to do the acts set out in the preceding paragraph, in particular by:

    a. placing and/or authorising others to place copies of the PETA Films on the video sharing website www.youtube.com ("You Tube"), in particular on the You Tube 'Channel' named 'Peta Europe' which was created and is maintained by or with the authorisation of the Defendants, thereby authorising the party or parties in control of You Tube to copy and to make the Film Scenes available to the public by electronic transmission in such a way that members of the public may access those Film Scenes from a place and at a time individually chosen by them, and/or

    b. permitting the PETA Films to be viewed from within various websites, including in particular the UK Website, the PETA TV Website, and You Tube, thereby authorising, as a consequence of the internal operation of the viewer's computer, the creation of copies of the PETA Films on that viewer's computer,

    c. authorising others to download the PETA Films and thus make copies of the Film Scenes,

    d. authorising others to embed the PETA Films in their own websites such that the Defendants have authorised those others to make the Film Scenes available to the public by electronic transmission in such a way that members of the public may access those Film Scenes from a place and at a time individually chosen by them,

    e. authorising the makers of the Third Party Films to do those acts.

24. The Defendants have thereby infringed copyright in the Film pursuant to sections 16, 17 and 20 of the 1988 Act.

25. By reason of the matters aforesaid, the Claimant has suffered loss and damage.

26. Further, the Defendants' aforesaid acts of infringement have been flagrant and have unjustly benefited it. Accordingly, the Claimant is entitled to and claims additional damages pursuant to section 97(2) of the Copyright Designs and Patents Act 1988.

### PARTICULARS OF FLAGRANCY/UNJUST BENEFIT AND/OR REASONS FOR THE AWARD OF ADDITIONAL DAMAGES

    a. By reason of the Second Defendant's purchase of 500 copies of the Film on DVD by agreement with Mr Schonfeld in or around June 2007 with the intention of

8

onward sale of those copies, the Defendants are well aware that copyright subsisted in the Film and that it was (at that time) owned and/or controlled by Mr Schonfeld.

b. In June 2009 the Defendants were formally put on notice of the Claimant's rights in the Film by virtue of communications between an employee or agent of the Claimant and the Second Defendant's employee or agent, who occupied a legal advisory position under the title "Corporate Counsel", Ms Paula Hough.

c. Despite this formal notification, the Defendants thereafter continued their infringing acts and created at least one further film (that entitled '2010 State of the Nation Undress') that included the Film Scenes.

d. Following enquiries in relation to the extent of their usage of the Film Scenes being made of the Defendants, the Defendants in the email from the Second Defendant's employee or agent Ms Paula Hough of 10 June 2009 materially understated their use of the Film Scenes by identifying only 3 of the 30 uses particularised above.

e. Further in that email of 10 June 2009, the Defendants falsely stated that no third parties had been authorised to use the Film Scenes or any of them.

f. The Defendants have sought to delay the commencement of proceedings against them to restrain further infringements, thereby allowing those infringements to continue unrestrained for a longer period, in particular through their pattern of falsely declaring the uses to which the Film Scenes and each of them have been put.

g. In some uses of the De-Beaking Scenes, the Defendants have incorrectly attributed ownership of rights in the those scenes, including attributing ownership to their own websites at the URLs KentuckyFriedCruelty.com and goveg.com in order to promote those websites.

h. The Defendants have been falsely attributed as the source of the Film Scenes in "I am an Animal: The Story of Ingrid Newkirk and PETA". It is inferred that this false attribution was procured by the Defendants.

i. In all the circumstances the Defendants have shown a flagrant disregard for the rights of the copyright owner.

j. The Defendants receive very substantial sums of money in donations which are attracted in part by its use of the PETA Films and by the powerful imagery of the Film Scenes.

9

    k. Mr Schonfeld is an outspoken critic of the Defendants' sexualised efforts to attract publicity. As a consequence, the Defendants' use of the Film Scenes (given Mr Schonfeld's role in the creation of the Film, as the former owner of the copyright in it, and as a director and shareholder of the Claimant) taints him and the Claimant with hypocrisy.

27. Unless restrained by this Honourable Court, the Defendants threaten and intend to continue the acts complained of herein whereby the Claimant will suffer further loss and damage.

28. The Claimant is entitled to and claims interest under s.35A of the Senior Courts Act 1981 and/or under the inherent jurisdiction of the Court at such rate and for such period as to this Honourable Court seem fit.

29. The Claimant does not know of all the instances of copyright infringement performed by the Defendants. The Claimant anticipates further instances of copyright infringement and/or indicia of flagrancy and/or unjust benefit and/or other reasons for the award of additional damages will be revealed in the course of disclosure, and seeks relief for all such breaches or infringements and on the basis of all such indicia.

## AND THE CLAIMANT CLAIMS:

(1) An injunction to restrain the First and Second Defendants and each of them, whether acting by their directors, officers, employees, servants or agents or any of them or otherwise howsoever from doing the following acts or any of them, that is to say:

    a. Copying the Film Scenes or any of them;

    b. Issuing copies of the Film Scenes or any of them to the Public;

    c. Making copies of the Film Scenes or any of them available to the public by electronic transmission in such a way that members of the public may access those Film Scenes or any of them from a place and at a time individually chosen by them;

    d. otherwise infringing the Claimant's copyright in the Film;

    e. causing, procuring or authorising any other person, firm or company to do any of the aforesaid acts.

10

(2) An order that the First and Second Defendants or either of them pay the Claimant's costs of taking appropriate measures for the dissemination of information concerning the judgment.

(3) An order for delivery up or, at the First and Second Defendants' option and on oath, destruction or modification by the removal of the Film Scenes and each of them from any all materials in the power possession custody or control of the First and Second Defendants or either of them (including for the avoidance of doubt any copy of any of the PETA Films over which the First and Second Defendants or either of them have control on third party websites) which are infringing copies of the Film.

(4) An inquiry as to damages suffered by the Claimant by reason of the aforesaid acts of infringement.

(5) Additional Damages.

(6) Alternatively to (4) and (5), above, and at the Claimant's option. an account of profits accrued to the First and Second Defendants and each of them by reason of the aforesaid acts of infringement.

(7) Interest under s.35A of the Senior Courts Act 1981 and/or under the inherent jurisdiction of the Court at such rate and for such period as to this Honourable Court seem fit.

(8) Costs

(9) Further or other relief.

                                                    THOMAS ST QUINTIN

The Claimant believes that the facts stated in these Particulars of Claim are true.

I am duly authorised by the Claimant to sign this statement.

Signed  *Victor Shonfeld*                    Position or office held: DIRECTOR

        VICTOR SHONFELD

Date  *24 September 2010*

                        11

Served this    day of            2010 by Forbes Anderson Free of 60 Charlotte Street,
London W1T 2NU

24/09 2010 16:31 FAX  02072813511          FORBES ANDERSON FREE                        ☑017/022

Claim No: _____

**IN THE HIGH COURT OF JUSTICE**
**CHANCERY DIVISION**
**INTELLECTUAL PROPERTY**

**BETWEEN:**

### BEYOND THE FRAME LIMITED

Claimant

- and -

**1)  PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS (PETA) FOUNDATION**
(a company limited by guarantee)

**2)  PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS INC.**
(a company incorporated under the laws of the state of Virginia in the United States of America)

**3)  BRITISH FILM INSTITUTE**
(a company incorporated by Royal Charter)

Defendants

---

**ANNEX 1**

---

12

24/09 2010 18:31 FAX 02072918511          FORBES ANDERSON FREE                    ☑ 018/022



50 Farringdon Road
London EC1R 3BP
England
(01) 251 3885
Telex: 8951281 Filming

1175 Greacen Point
Mamaroneck, N.Y.
U.S.A. 10543

30 June 1982

Mr. Victor Schonfeld
C/o 1175 Greacen Point
Mamaroneck, NY 10543

Dear Mr. Schonfeld,

As you know, the copyright in "The Animals Film" was registered
in the name of this company on June 17, 1982 with the United
States Library of Congress.
In exchange for services rendered by you to this company in
connection with the production and distribution of "The Animals
Film" and in exchange for your payment to us of the sum of $1,
the payment of which we hereby acknowledge, we now transfer
ownership of the copyright in "The Animals Film" from "Slick Pics
International, Inc." to "Victor Schonfeld".

We undertake to record the transfer with the United States
Library of Congress, at such time as you may request we do so.

Yours sincerely,

Victor Schonfeld
Director,
Slick Pics International, Inc.

Claim No:

**IN THE HIGH COURT OF JUSTICE**
**CHANCERY DIVISION**
**INTELLECTUAL PROPERTY**

BETWEEN:

**BEYOND THE FRAME LIMITED**

Claimant

- and -

**1) PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS (PETA) FOUNDATION**
**(a company limited by guarantee)**

**2) PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS INC.**
**(a company incorporated under the laws of the state of Virginia in the United States of America)**

**3) BRITISH FILM INSTITUTE**
**(a company incorporated by Royal Charter)**

Defendants

---

**ANNEX 2**

---

13

## Deed of Assignment

### Between Victor Schonfeld

### and

### Beyond the Frame Limited

### dated 13 April 2010

1.  Victor Schonfeld hereby assigns absolutely as legal and beneficial owner by way of present and future assignment with full title guarantee to Beyond the Frame Limited all copyright and other rights of a like nature throughout the world which subsist at the date hereof or which may or will subsist at any time in the film entitled "The Animals Film" ("the Film") together with the right to bring proceedings and to claim damages and other available remedies in respect of any infringements of copyright in the Film prior to the date of this assignment.

2.  This deed is governed by and shall be construed in accordance with English law, and any proceedings arising out of or in connection with it shall be subject to the exclusive jurisdiction of the English courts.

Signed as a deed by Victor Schonfeld

Signature: .....................

Date: .....................

In the presence of

Signature: .....................

Date: .....................

Name of witness:.....................

Address of witness:.....................

.....................

.....................

Occupation of witness:.....................

Executed as a deed by Beyond the Frame Limited

acting by Victor Schonfeld, a director

1

Signature: 

Date: .13./4./10

And Jenifer Millstone, a director

Signature: 

Date: .......13. April. 2010

2

24/09 2010 16:32 FAX  02072913511          FORBES ANDERSON FREE                          ☑ 022/022

Claim No:

**IN THE HIGH COURT OF JUSTICE**
**CHANCERY DIVISION**
**INTELLECTUAL PROPERTY**

B E T W E E N :

BEYOND THE FRAME LIMITED

Claimant

- and -

1) PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS (PETA)
FOUNDATION
(a company limited by guarantee)

2) PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS INC.
(a company Incorporated under the laws of
the state of Virginia in the United States of
America)

3) BRITISH FILM INSTITUTE
(a company Incorporated by Royal
Charter)

Defendants

---

PARTICULARS OF CLAIM

---

Messrs Forbes Anderson Free
60 Charlotte Street
London
W1T 2NU

Tel:  020 7291 3500
Fax:  020 7291 3511
REF: MB/B1054-001
SOLICITORS FOR THE CLAIMANT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

### CV10- 7576 MMM (SSx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

CENTRAL          District of CALIFORNIA

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., a Virginia corporation<br>*Plaintiff*<br>v.<br>BEYOND THE FRAME, LTD., a United Kingdom corporation,<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>) |

**CV10-7576 -mmm (SSx)**

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*
BEYOND THE FRAME, LTD.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: KATHYLEEN A. O'BRIEN, REED SMITH LLP, 1901 Avenue of the Stars, Suite 700, Los Angeles, CA 90067; Tel. (310) 734-5200

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: 10-8-10

**TANYA DURANT**
*Signature of Clerk or Deputy Clerk*

188

AO-440

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ 0.00 _ for travel and $ _____ 0.00 _ for services, for a total of $ _____ 0.00 _ .


I declare under penalty of perjury that this information is true.


Date: _____          _____
                                                     *Server's signature*

                                              _____
                                                     *Printed name and title*


                                              _____
                                                     *Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.

**DEFENDANTS**

BEYOND THE FRAME, LTD.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

KATHYLEEN A. O'BRIEN
REED SMITH LLP
1901 Avenue of the Stars
Suite 700
Los Angeles, CA 90067
(310) 734-5200

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT: $** 0.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and pertaining to claims arising under the United States Copyright Act, 17 U.S.C. § 101 et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☒ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | ☐ 871 IRS - Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number: **CV10-7576-**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)  CIVIL COVER SHEET  Page 1 of 2
CCD-JS44

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No    [ ] Yes

If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No    [ ] Yes

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    [ ]   A. Arise from the same or closely related transactions, happenings, or events; or

         [ ]   B. Call for determination of the same or substantially related or similar questions of law and fact; or

         [ ]   C. For other reasons would entail substantial duplication of labor if heard by different judges; or

         [ ]   D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[X] Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[X] Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Defendant is in London, England |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | The accusations of copyright infringemnet arose from threats made by Defendant in England to sue Plaintiff in the U.S. |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties

Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _[signature]_     Date _10-8-10_

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)). |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |