Stephen M. Doniger, Esq. (SBN 179314)
stephen@donigerlawfirm.com
Scott A. Burroughs, Esq. (SBN 235718)
scott@donigerlawfirm.com
Regina Y. Yeh, Esq. (SBN 266019)
regina@donigerlawfirm.com
DONIGER / BURROUGHS APC
300 Corporate Pointe, Suite 355
Culver City, California 90230
Telephone: (310) 590-1820
Facsimile:  (310) 417-3538

Attorneys for Defendant BEYOND THE FRAME, LTD.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., a Virginia Corporation;<br><br>Plaintiff,<br><br>v.<br><br>BEYOND THE FRAME, LTD., a United Kingdom Corporation; et al.,<br><br>Defendants. | Case No.: CV 10-07576 MMM (SSx)<br>_The Honorable Margaret M. Morrow Presiding_<br><br>**DEFENDANT BEYOND THE FRAME, LTD.'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE REGARDING TRANSFER OF ACTION**<br><br>*[Declaration of Victor Schonfeld (Previously Submitted in Support of Defendant's Motion to Dismiss) Submitted Concurrently Herewith]*<br><br>Date: Show Cause<br>Time: Show Cause<br>Courtroom: 780<br><br>Complaint Filed: October 8, 2010 |

1

1

## <u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION ................................................................... 6

II.     FACTUAL BACKGROUND ................................................. 6

III.    ARGUMENT ......................................................................... 9

   A.   The Court Should Transfer this Case to New York ........................ 9

            1. PETA's California Filing was Forum Shopping..................... 10

            2. PETA's California Filing was an Improper Anticipatory Suit. .............. 12

   B.   The Balances of Convenience and Equity Favor Litigating this Dispute in New York. ................................................................. 15

   C.   The First-Filed Rule Does Not Apply When Jurisdiction Does Not Exist ....... 17

IV.     CONCLUSION ..................................................................... 25

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT BEYOND THE FRAME, LTD.'S RESPONSE TO THE COURT'S ORDER TO
SHOW CAUSE REGARDING TRANSFER OF ACTION

# TABLE OF AUTHORITIES

## Cases

*Albert Fadem Trust v. Duke Energy Corp.*, 214 F.Supp.2d 341, 343 (S.D.N.Y.2002) ............................................................................................................. 10, 15

*Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967).............. 13

*Arrow Elec., Inc. v. Ducommun Inc.*, 724 F.Supp. 264, 266 (S.D.N.Y.1989) ............ 17

*Bancroft & Masters v. Augusta Nat'l*, 223 F.3d 1082, 1086 (9th Cir. Cal. 2000)21, 23, 24

*Berkshire Int'l Corp. v. Marquez*, 69 F.R.D. 583, 586 (E.D.Pa.1976) ........................ 18

*Burger King v. Rudzewicz*, 471 U.S.462, 475-76 (1985) ............................................ 23

*CalfMass v. McClenahan*, No. 93 Civ 3290 (JSM), 1993 WL 267418, at *2 (S.D.N.Y. July 9, 1993) ................................................................................... 14

*Capitol Records, Inc. v. Optical Recording Corp.*, 810 F.Supp. 1350, 1354-55 (S.D.N.Y.1992) .............................................................................................. 15

*Carruthers v. Amtrak*, No. 95 Civ 0369, 1995 WL 378544, at *3 (S.D.N.Y. June 26, 1995) ............................................................................................................ 17

*Coastal Video Communs. Corp. v. Staywell Corp.*, 59 F. Supp. 2d 562 (E.D. Va. 1999) ............................................................................................................ 22

*Columbia Pictures Indus., Inc. v. Schneider*, 435 F.Supp. 742, 748 (S.D.N.Y.1977) ..................................................................................................................... 18, 24

*Columbia Pictures Industries, Inc. v. Schneider*, 435 F.Supp. 742, 747 (S.D.N.Y.1977).............................................................................................. 13

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993)................ 19

*Crosley Corp. v. Westinghouse Elec. & Mfg. Co.*, 130 F.2d 474, 475 (3rd Cir. 1942) ..................................................................................................................... 10, 18

*Cybersell, Inc. v. Cybersell Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) ......................... 23

*Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978) ....................... 14

3

First City Nat. Bank and Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir.1989) .........9

*Gray & Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990) . 23

*Hartford Accident & Indemnity Co. v. Hop-on Intl. Corp.,* 568 F.Supp. 1569, 1573-74

    (S.D.N.Y.1983) .................................................................................................14

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984). .......... 19, 20

*In re Arbitration Between Griffin Indus., Inc. and Petrojam, Ltd*., 58 F.Supp.2d 212,

    218 (S.D.N.Y.1999) ........................................................................................11

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)....................... 19, 24

*Ivy-Mar v. Weber-Stephens Prods. Co.*, 1993 WL 535166 at *2, 1993 U.S.Dist.

    LEXIS 17965 at *6 (N.D. Ill. Jan. 13, 1994)....................................................9

*Jefferson Ward Stores, Inc. v. Doody Co.,* 560 F.Supp. 35, 37 (E.D.Pa.1983) ..........18

*Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004) ..............................22

*Katzenbach v. Grant,* 2005 U.S. Dist. LEXIS 46756 (E.D. Cal. June 7, 2005)..........21

*Kellen Co., Inc. v. Calphalon Corp*., 54 F.Supp.2d 218, 223 (S.D.N.Y.1999).....10, 12

*Moberg v. 33T LLC,* 666 F. Supp. 2d 415 (D. Del. 2009) ..........................................22

*Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc*., 804 F.2d

    16, 19 (2d Cir.1986)........................................................................................10

*National Patent Dev. Corp. v. American Hosp. Supply Corp*., 616 F.Supp. 114, 118

    (S.D.N.Y.1984) ..............................................................................................10

*Ontel Prod., Inc. v. Project Strategies Corp*., 899 F.Supp. 1144, 1150

    (S.D.N.Y.1995) .................................................................................10, 12, 13

*Panavision International, L.P. v. Teoppen,* 141 F.3d 1316, 1323 (9th Cir. 1998) .....24

*Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1159 (9th Cir. 2006)............................23

*Perez v. Ledesma*, 401 U.S. 82, 119 n. 12, 91 S.Ct. 674, 694, 27 L.Ed.2d 701 (1971)

    ........................................................................................................................14

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)........23

*Shute v. Carnival Cruise Lines*, 897 F.2d 377, 380 (9th Cir. 1990), *rev'd on other*

    *grounds*, 499 U.S. 585 (1991) .......................................................................20

4

DEFENDANT BEYOND THE FRAME, LTD.'S RESPONSE TO THE COURT'S ORDER TO
SHOW CAUSE REGARDING TRANSFER OF ACTION

*Silverlit Toys Manufactory, Ltd. v. Absolute Toy Marketing, Inc.*, 2007 WL521239 at
  *4 (N. D. Cal. 2007) ........................................................................... 24

*Toy Biz, Inc. v. Centuri Corp.*, 990 F.Supp. 328, 332 (S.D.N.Y.1998) ............... 10, 11

William Gluckin & Co. v. Int'l. Playtex Corp., 407 F.2d 177, 178 (2d Cir. 1969) ....... 9

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). ............. 20, 24

**Statutes**

317 U.S. 681, 63 S.Ct. 202, 87 L.Ed. 546 (1942) ........................................ 18

440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979) .................................... 14

573 F.2d 1288 (2d Cir.1978) ................................................................ 18

573 F.2d 1288 (2d Cir.1978). ............................................................... 25

Cal. Code Civ. Proc. § 410.10. ............................................................. 19

**Other Authorities**

http://www.peta.org/about/default.aspx ................................................... 24

http://www.peta.org/about/work-at-peta/jobs-faq.aspx ................................. 12

Id., 899 F.Supp. at 1151 ...................................................................... 12

www.peta.org ................................................................................... 16

DEFENDANT BEYOND THE FRAME, LTD.'S RESPONSE TO THE COURT'S ORDER TO
SHOW CAUSE REGARDING TRANSFER OF ACTION

## I. __INTRODUCTION__

Plaintiff People for the Ethical Treatment of Animals, Inc.'s ("Plaintiff" or "PETA") complaint was improperly filed in this Court. Its response to this Court's February 16, 2011 Order to Show Cause fails to establish that this case was properly filed in Califorina. This case should be transferred to New York because, *inter alia*, there is an exceedingly tenuous relationship between the instant dispute and California, and Beyond the Frame, Ltd. ("BTF") is not subject to jurisdiction in California.

PETA fails to establish a connection between this dispute and California, and fails to explain why it filed in California given that BTF is located in London, England, PETA's principal place of business is in Virginia, and virtually all third party witnesses are located in New York. Instead, PETA argues that the New York case should be dismissed because "[t]his Court should not allow BTF to succeed in its attempt to obtain what BTF perceives as some unfair tactical advantage over PETA." Pl.'s Mot. at 2. However, PETA then fails to articulate what that "unfair tactical advantage" may be.

For these reasons, as set forth in detail below, the Court should transfer this action. In the alternative, this Court should enjoin this action while the Court in the New York action reviews PETA's motion to dismiss that action.

## II. __FACTUAL BACKGROUND__

BTF is a small United Kingdom production company with two principals and no employees. Declaration of Victor Schonfeld ("Schonfeld Decl.") ¶1. In or about 1981, Victor Schonfeld, the managing director of BTF, created, developed, and authored the feature-length motion picture entitled, "The Animals Film" ("the Film"). Schonfeld Decl. ¶ 3. The Film was critically recognized for its coverage of animal mistreatment in modern society, and has been accessioned in both the British

6

National Film Archive and the U.S. Library of Congress for preservation in their permanent collections. *Id.*

BTF's corporate offices, production facilities, distribution facilities, and manufacturing facilities are all located in the United Kingdom. *Id.* at ¶ 2. BTF does not own real or personal property in California. *Id.* It is not registered to do business in California, nor does it have a registered agent in California. *Id.* BTF does not have any bank accounts or telephone listings in California, and does not pay taxes in California. *Id.* In short, BTF is a foreign company which does no business in California.

In 2007, BTF released a 25th anniversary edition of "The Animals Film" in a DVD format. *Id.* at ¶ 4. This DVD was made available online to purchasers through two websites which were created and maintained on servers in the United Kingdom: <http://www.beyondtheframe.co.uk> and <http://www.theanimalsfilm.com>. Although the Film was available to purchasers throughout the world, BTF has not conducted any print or broadcasting advertising or marketing in order to promote or advertise the Film, either in the United States or in the United Kingdom. *Id.* at ¶ 5. In three and-a-half years, BTF sold approximately 950 copies of the Film through its websites, with only nineteen (or less than two percent) sold to California residents. *Id.* at ¶ 6. Since the Film was marketed and made available on the BTF websites, BTF received revenues of approximately $29,000.00 in connection with the film. Of these monies, only $360.62 resulted from DVD sales to California residents. *Id.* at ¶ 7. In contrast, BTF has received $431.80 in revenues from sales of the DVD to New York residents, and at least an additional $6,175.00 in connection with two licensing agreements entered into with a New York company, and paid by wire from New York. *Id.*

DEFENDANT BEYOND THE FRAME, LTD.'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE REGARDING TRANSFER OF ACTION

Moreover, for each of the California sales, the California resident reached out to the BTF website in order to purchase the film; in no case did BTF direct its sales campaign toward California residents. *Id.* at ¶¶ 5-7.

In or about the summer of 2010, BTF discovered that PETA had incorporated at least six different scenes from the Film in over thirty different motion picture projects that it had produced and distributed. *Id.* at ¶ 8. In one of these exploitations, PETA even claimed to have authored the footage it misappropriated from the Film. *Id.* BTF further discovered that PETA was authorizing third-party usage of the footage, and distributing the footage over the Internet. *Id.*

On or about September 7, 2010, BTF sent PETA a cease and desist letter regarding the exploitation of scenes from the Film. *Id.* at ¶ 9. PETA failed to adequately respond, and continued exploiting, exhibiting, and distributing BTF's proprietary footage. *Id.*

On September 24, 2010, BTF filed a copyright infringement action against PETA in the United Kingdom.

On October 8, 2010, PETA filed the California action seeking a declaratory judgment that it had not infringed BTF's copyrights, and about a month later, on November 10, 2010, BTF filed the instant action in New York. Following the filing of the New York case, on or about November 16, 2010, PETA served BTF with the California summons and complaint.

New York is the proper venue for this case. BTF's offices in London are significantly closer to New York than to California. PETA's headquarters, located in Norfolk, Virginia, are much closer to New York than California. The majority, if not all, of the evidence and witnesses are located in New York or Virginia, and the servers hosting the infringing content are located in, and registered to, a location in

DEFENDANT BEYOND THE FRAME, LTD.'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE REGARDING TRANSFER OF ACTION

Virginia[1].  Despite these facts, PETA filed an action alleging only one claim –for declaratory relief, no less – in California in an attempt to drive up the cost and burden of this case.

On February 16, 2011, this Court issued its "ORDER TO SHOW CAUSE: Why Case Should Not Be Transferred to the Southern District of New York." Ex. A. PETA filed a response that wholly fails to show cause. As set forth below, this case is more properly before the New York Court.

## I. <u>ARGUMENT</u>

### A. The Court Should Transfer this Case to New York

The Court should not apply the first-to-file rule. The general rule when considering cases pending simultaneously in different federal courts involving the same parties and issues is that the first-filed of the two takes priority absent "special circumstances" or a balance of convenience in favor of the second.  *First City Nat. Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989). *See also William Gluckin & Co. v. Int'l. Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969).  It is well established, however, that courts need not slavishly adhere to the first-filed rule, and that where circumstances dictate, "great significance should not be placed upon the dates the actions were filed." *Ivy-Mar v. Weber-Stephens Prods. Co.*, 1993 WL 535166 at *2, 1993 U.S.Dist. LEXIS 17965 at *6 (N.D. Ill. Jan. 13, 1994). As Judge Weinfeld noted, "the courts should be concerned with what the interests of justice

_____

[2] Courts have wide discretion to decline to exercise their power over a declaratory relief action. <u>See</u> *Step-Saver Data Systems, Inc. v. Wyse Technology, Inc.*, 912 F.2d 643, 646-47 (3d Cir.1990) ("... the Act only gives a court the power to make a declaration regarding `the rights and other legal relations of any interested party seeking such declaration,' ...; it does not require that the court exercise that power.")(emphasis in the original); *A.G. Edwards & Sons, Inc. v. Public Building Commission of St. Clair County, Illinois*, 921 F.2d 118 (7th Cir.1990)(noting that the Declaratory Judgment Act provides district courts with wide discretion to abstain from exercising that jurisdiction). <u>See also</u> 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, §

_____

DEFENDANT BEYOND THE FRAME, LTD.'S RESPONSE TO THE COURT'S ORDER TO
SHOW CAUSE REGARDING TRANSFER OF ACTION

1  require and not with who won the race." *National Patent Dev. Corp. v. American*

2  *Hosp. Supply Corp.*, 616 F.Supp. 114, 118 (S.D.N.Y.1984).

3      Specifically, courts should discard the first-to-file rule where, for example,  the

4  first-filed action was motivated solely by forum shopping or was an "improper

5  anticipatory filing", *Toy Biz, Inc. v. Centuri Corp.*, 990 F.Supp. 328, 332

6  (S.D.N.Y.1998); *Ontel Prod., Inc. v. Project Strategies Corp.*, 899 F.Supp. 1144,

7  1150 (S.D.N.Y.1995), or where the balances of convenience and equity favor the

8  forum in which the second action was filed. *Albert Fadem Trust v. Duke Energy*

9  *Corp.*, 214 F.Supp.2d 341, 343 (S.D.N.Y.2002).  Similarly, the first-filed rule will

10  not apply if jurisdiction over the opposing party does not exist in the first-filed forum.

11  *Crosley Corp. v. Westinghouse Elec. & Mfg. Co.,* 130 F.2d 474, 475 (3rd Cir. 1942).

12  BTF submits that these factors all weigh in favor of transferring this case to New

13  York.

14          **1.    PETA's California Filing was Forum Shopping**

15      PETA's commencement of the California action seeking only declaratory relief

16  was an attempt to shop for a favorable forum.  The Second Circuit has noted that in

17  reviewing a first-to-file dispute, "the chief `special circumstance' ... is our interest in

18  discouraging forum shopping." *Motion Picture Lab. Technicians Local 780 v.*

19  *McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir.1986). *See also Kellen Co., Inc. v.*

20  *Calphalon Corp.*, 54 F.Supp.2d 218, 223 (S.D.N.Y.1999) ("Most commonly, courts

21  have recognized an exception to the first-filed rule where the first-filed action was

22  instituted by the defendant in the second action, and the defendant won the race to the

23  courthouse under questionable circumstances."); *Greenline Industries, Inc., v. Agri-*

24  *Process Innovations, Inc.,* 2008 WL 2951743, *3 (N.D. Cal. July 28, 2008), *quoting*

25  *Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 625 (9th Cir. 1991).  Forum

26

27

28  2759 at 645 (1983) ("It now is well settled by a multitude of cases that the granting of a declaratory judgment rests in the sound discretion of the trial court exercised in the public interest.").

shopping giving rise to an exception to the rule may be found "where a suit bears only a slight connection to the [forum]." *Toy Biz, Inc.*, 990 F.Supp. at 332 (finding trademark infringement action had "significant connection" to New York forum where plaintiff's principal place of business was in New York and allegedly infringing products were sold throughout the country, including in New York).  *See also* In re Arbitration Between Griffin Indus., Inc. and Petrojam, Ltd*., 58 F.Supp.2d 212, 218 (S.D.N.Y.1999).

PETA's filing in California was improper forum shopping because, among other things: (1) PETA's headquarters, witnesses, files, evidence, and computer servers are in Norfolk, Virginia; (2) BTF's offices are in London, England; (3) the website that exhibited and encouraged the download of the footage at issue is registered to an address in Norfolk, Virginia; (4) other parties involved in this dispute, such as Home Box Office, Inc. ("HBO"), Stick Figure Productions, Inc. ("Stick Figure"), and at least two other production companies that obtained from PETA the footage at issue,  are located in New York; (5) all witnesses and evidence, including third-party witnesses, are located in New York, Virginia, or London; (6) filing in California significantly increases the cost to BTF given the extra distance that BTF would have to travel, and the extra expense it would take to locate and depose witnesses, and discover evidence; (7) BTF is not subject to jurisdiction in California; (8) certain entities or individuals not yet named as defendants to whom PETA sent footage taken from the Film are based in New York and may not be subject to California jurisdiction; and (9) the nucleus of facts at issue have no connection to California.

PETA's California complaint has virtually no relation to California.  PETA's "principal place of business" is in Norfolk, Virginia.  BTF's principal and only place of business is in London, England.  Only a small number of the DVD's at issue were sold in California, and all of those were purchased by consumers who sought out the product over the Internet. To wit, $360.62 was received by BTF as the result of DVD

---

DEFENDANT BEYOND THE FRAME, LTD.'S RESPONSE TO THE COURT'S ORDER TO
SHOW CAUSE REGARDING TRANSFER OF ACTION

sales to California residents. In contrast, BTF received $431.80 in revenues from sales of the DVD to New York residents, and at least an additional $6,175.00 from licenses entered into with a resident of New York. This is not sufficient to confer jurisdiction.

PETA argues that suit is proper in California because one of its principal places of business is there. This is disingenuous, as PETA, like all companies, has one "principal" place of business, and it is located in Virginia. Moreover, in direct contradiction of the sworn testimony submitted to the Court, its own literature admits that the California office is a "satellite office," and it has similar satellite offices all over the world, including in New York, Washington, D.C., and Oakland. See <http://www.peta.org/about/work-at-peta/jobs-faq.aspx>. Ex. B.

PETA's conjured post-facto grounds for California jurisdiction do not withstand close scrutiny.   Its headquarters are in Norfolk, as are the majority of its witnesses, files, and evidence.  The California filing was improper forum shopping.

### 2. PETA's California Filing was an Improper Anticipatory Suit.

The California filing by PETA is also an "improper anticipatory filing, "that is, "one made under the apparent threat of a presumed adversary filing the mirror image of that suit" in another court. *Ontel Prod.*, supra, 899 F.Supp. at 1150.  It is improper for a party to launch a preemptive strike by racing to the courthouse in his preferred forum before his adversary has a chance to file their action in the forum of their choice, and such a party should not benefit from the first-filed rule. Id., 899 F.Supp. at 1151; *Kellen*, supra, 54 F.Supp.2d at 223 (declining to apply first-filed rule where plaintiff in first action "won the race to the courthouse under questionable circumstances"). An apparent threat of litigation can arise where there is an overt statement to that effect or where the parties have been engaged in negotiations that have ceased. See *800-Flowers*, supra, 860 F.Supp. at 132-33; *Hanson PLC*, supra, 932 F.Supp. at 107.

DEFENDANT BEYOND THE FRAME, LTD.'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE REGARDING TRANSFER OF ACTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PETA's filing in California was made after receipt of a demand from BTF's counsel and BTF's initiation of an action in England.  PETA's opening brief concedes that it received a demand from BTF as early as July of 2010. Motion, p. 4. PETA also concedes that it received notice of BTF's intent to file a lawsuit against PETA in the United States prior to its filing the California action. Id.  BTF sent this demand and notice during settlement discussions regarding BTF's claims. Schonfeld Decl., ¶ 10. After receiving the demand and notice, and while the parties were discussing settlement, PETA filed its California complaint on October 8, 2010. Id.

The first-filed rule should not apply where there is a threat of litigation followed by settlement talks, since such talks would reasonably lull the party who would otherwise have pursued legal action into not doing so. See *Hanson PLC*, supra, 932 F.Supp. at 107 (first-filed rule did not apply where party who filed second action had waited to file suit in reliance on proposed settlement talks); *Ontel Prod*., supra, 899 F.Supp. at 1150-51 ("[T]he first-filed rule should operate so as to benefit those parties who were prepared, and had every intention, to pursue foreseeable legal action but failed to bring suit first due solely to their attempt to settle the matter without court involvement."). As the California case was clearly filed while the parties were discussing a resolution, the first-filed rule should not apply.

Moreover, when the first-filed action is a declaratory judgment action triggered by a notice letter, this equitable consideration should be a factor in whether to allow the later filed action to proceed to judgment in the plaintiff-in-fact's chosen forum. *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967). Accord, *Columbia Pictures Industries, Inc. v. Schneider*, 435 F.Supp. 742, 747 (S.D.N.Y.1977).  As Justice Brennan observed, "[t]he federal declaratory judgment is not a prize to the winner of a race to the courthouses." *Perez v. Ledesma*, 401 U.S.

13

82, 119 n. 12, 91 S.Ct. 674, 694, 27 L.Ed.2d 701 (1971) (Brennan, J. dissenting)[2].
PETA's complaint contains only a request for declaratory relief, which has
specifically been found to be evidence of an anticipatory filing.

When a federal declaratory judgment action has been filed in apparent
anticipation of the other pending proceeding, equitable considerations militate toward
"allowing the later filed action to proceed to judgment in the plaintiff's chosen
forum." *Hartford Accident & Indemnity Co. v. Hop-on Intl. Corp.,* 568 F.Supp. 1569,
1573-74 (S.D.N.Y.1983), <u>citing</u> *Factors Etc., Inc. v. Pro Arts, Inc*., 579 F.2d 215,
219 (2d Cir.1978), <u>cert. denied</u>, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).
PETA filed its California action in anticipation of BTF's suit.  It knew that BTF had
filed a suit in the UK, and was on notice that BTF sought to file suit in the United
States.  Based on this knowledge, it filed its anticipatory suit in an improper forum in
an attempt to increase the burden of the proceedings.

In sum, PETA's California action, which seeks only declaratory relief and was
filed after receiving a demand letter, during settlement discussions, in a courthouse
across the country from its Virginia headquarters, should not be saved by the first-
filed rule. *CalfMass v. McClenahan,* No. 93 Civ. 3290 (JSM), 1993 WL 267418, at
*2 (S.D.N.Y. July 9, 1993) ("[W]here the first-filed case is a declaratory judgment
action precipitated by a demand letter and filed in anticipation of the later action, the
second-filed action will be permitted to go forward in plaintiff's chosen forum.")

---

[2] Courts have wide discretion to decline to exercise their power over a declaratory relief action. <u>See</u>
*Step-Saver Data Systems, Inc. v. Wyse Technology, Inc*., 912 F.2d 643, 646-47 (3d Cir.1990) ("...
the Act only gives a court the power to make a declaration regarding `the rights and other legal
relations of any interested party seeking such declaration,' ...; it does not require that the court
exercise that power.")(emphasis in the original); *A.G. Edwards & Sons, Inc. v. Public Building
Commission of St. Clair County, Illinois*, 921 F.2d 118 (7th Cir.1990)(noting that the Declaratory
Judgment Act provides district courts with wide discretion to abstain from exercising that
jurisdiction). <u>See also</u> 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, §
2759 at 645 (1983) ("It now is well settled by a multitude of cases that the granting of a declaratory
judgment rests in the sound discretion of the trial court exercised in the public interest.").

DEFENDANT BEYOND THE FRAME, LTD.'S RESPONSE TO THE COURT'S ORDER TO
SHOW CAUSE REGARDING TRANSFER OF ACTION

(citations omitted); *Capitol Records, Inc. v. Optical Recording Corp.,* 810 F.Supp. 1350, 1354-55 (S.D.N.Y.1992) (factors weighing in favor of allowing second-filed action to proceed include judicial economy, policy in favor of settlement, preventing race to courthouse triggered by demand letter, and fact that second action was filed only twenty days after first action).

**B.     The Balances of Convenience and Equity Favor Litigating this Dispute in New York.**

Some of the factors a district court is to consider when deciding whether to apply the first-to-file rule are, *inter alia:* "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *Albert Fadem Trust,* supra, 214 F.Supp.2d at 343.

In this case, where the actual plaintiff-in-dispute, BTF, chose to file in New York, all factors favor foregoing the first-to-file rule and litigating BTF's claims here, other than the nominal California plaintiff's choice of forum, which, as discussed above, was filed in an improper anticipatory attempt to forum shop.

Factor (2) favors transfer, as PETA's headquarters are located in Norfolk, Virginia, which is proximate to New York, PETA has a satellite office in New York, and BTF is located in London,  which is significantly (indeed, about six hours by air) closer to New York than California.

In addition, HBO and Stick Figure, two defendants named in this action but not in the California action, are located in New York[3], and additional companies that

---

[3] BTF has tentatively settled with HBO and Stick Figure, but they are still active defendants. Even if they are dismissed, their witnesses and evidence will still be relevant to and necessary for this action.

15

---

DEFENDANT BEYOND THE FRAME, LTD.'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE REGARDING TRANSFER OF ACTION

1   received footage from the Film from PETA and exploited the same are located in

2   New York.

3          Also, Mr. Schonfeld, BTF's principal, and a key witness, suffers from

4   hypertension, for which he receives constant treatment.  Schonfeld Decl. ¶11. Forcing

5   him to travel the extra distance to California will unnecessarily exacerbate his

6   symptoms. Id.

7          Given the above, this factor favors transfer.

8          Factor (3) similarly favors transfer, as the evidence is either in London with

9   BTF, in Virginia with PETA, or in New York with HBO, Stick Figure, or the other

10  parties that received infringing footage from PETA.  Virtually none of the evidence is

11  in California.

12         Factor (4) also favors transfer, as it is more convenient for BTF to attend

13  proceedings in New York, for PETA to travel to New York from Virginia or its local

14  New York office, and for HBO, Stick Figure, and the additional New York parties to

15  attend proceedings in their hometown.

16         Factor (5) also favors transfer. PETA's uploading, hosting, posting,

17  distribution, and making available for download of BTF's Film footage took place in

18  Norfolk, Virginia. To the extent that much of the infringement occurred online, the

19  web site that hosted the infringing content belongs to PETA and is registered to

20  PETA in Virginia at the address <www.peta.org>. See Ex. C.  Moreover, the

21  operative facts concern a motion picture about PETA produced by New York-based

22  Stick Figure to which PETA contributed footage taken from the Film, and which

23  motion picture was owned and distributed by New York-based HBO.  Additional

24  New York companies have produced, distributed and sold films bearing footage from

25  the Film at PETA's urging.

26         Factor (6) favors transfer, as key witnesses from HBO and Stick Figure are

27  located in New York, as are the witnesses from the as of yet unnamed third parties

28  that also exploited footage from the Film. The availability of compulsory process

16

DEFENDANT BEYOND THE FRAME, LTD.'S RESPONSE TO THE COURT'S ORDER TO
SHOW CAUSE REGARDING TRANSFER OF ACTION

over material non-party witnesses is an important factor. See *Arrow Elec., Inc. v. Ducommun Inc*., 724 F.Supp. 264, 266 (S.D.N.Y.1989). This consideration is generally relevant only with respect to third-party witnesses, since employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship. See *Carruthers v. Amtrak,* No. 95 Civ. 0369, 1995 WL 378544, at *3 (S.D.N.Y. June 26, 1995).

HBO and Stick Figure are material witnesses for purposes of discovery and trial. In addition, if the case were moved from New York it will be difficult for BTF to subpoena the additional production companies that obtained excerpts of the Film from PETA and commercially exploited same.  These entities will either be added as defendants, or crucial third-party witnesses.  In contrast, there are no virtually no witnesses located in California, other than lower-level PETA personnel who are "available in any venue by virtue of the employment relationship." Id.

Factor (7) also favors transfer, as BTF is a small, two-person film company that produces documentary and education fare, Schonfeld Decl. ¶1, and PETA is an international juggernaut, claiming revenues of $32,218,815 from contributions, $1,139,853 from merchandise sales, $1,493,249 from other income, for total revenues of $35,851,917 for the year 2010. See http://www.peta.org/about/learn-about-peta/financial-report.aspx. Ex. D.  PETA's financial report also reveals that it has set aside $1,000,000.00 in 2010 for addressing legal matters. Id.  Given this gross disparity in resources, and the parties' respective legal budgets, this factor favors transfer.

In sum, all of the foregoing factors favor transfer.

## C.    The First-Filed Rule Does Not Apply When Jurisdiction Does Not Exist

This Motion should also be dismissed because the California action cannot proceed given the lack of jurisdiction over BTF in California. The first-to-file rule should not apply when the nominative plaintiff has not established jurisdiction over

17

the party with the substantive claims. *Crosley Corp.,* supra, 130 F.2d at 475 (jurisdiction must be acquired over the parties before a case may be considered "first filed."), cert. denied, 317 U.S. 681, 63 S.Ct. 202, 87 L.Ed. 546 (1942); *Omni-Exploration, Inc. v. McGookey,* 520 F.Supp. 36, 37 (E.D.Pa. 1981); *Berkshire Int'l Corp. v. Marquez,* 69 F.R.D. 583, 586 (E.D.Pa.1976); cf. *Jefferson Ward Stores, Inc. v. Doody Co.,* 560 F.Supp. 35, 37 (E.D.Pa.1983) (citing *Omni-Exploration*).  BTF has challenged jurisdiction in the California action, and the Judge Morrow, after reviewing the papers, issued an OSC as to why the California action should not be transferred to New York.

This order alone provides grounds for denying the Motion, as PETA, which concedes it has a place of business in New York, is subject to jurisdiction here. Given the doubts regarding the propriety of jurisdiction over BTF in California, PETA's Motion should be denied. *Columbia Pictures Indus., Inc. v. Schneider,* 435 F.Supp. 742, 748 (S.D.N.Y.1977) (doubts concerning lack of personal jurisdiction in first filed action require stay of that action), aff'd, 573 F.2d 1288 (2d Cir.1978).  The *Columbia Pictures* court noted that "[t]he possibility of an erroneous determination of personal jurisdiction in New York followed by lengthy proceedings thereafter over which we were ultimately found to lack jurisdiction, and the desirability of avoiding decisions unnecessary to ultimate resolution of the merits by a federal court strongly suggest that California is a more appropriate forum." Id. at 748.  This case presents the identical situation.

Finally, no discovery has yet been taken in the California action, so there would be no prejudice should a transfer be ordered. Id. at 749 (stating that because "no discovery or other pretrial proceedings have occurred in either district," first-to-file rule should not apply).

As BTF is not subject to jurisdiction in California, for the reasons set forth below, this action should be transferred.

18

---

DEFENDANT BEYOND THE FRAME, LTD.'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE REGARDING TRANSFER OF ACTION

### a.  **BTF is not Subject to Jurisdiction in California.**

In order to establish personal jurisdiction in the plaintiff's chosen forum, the Supreme Court requires that the plaintiff establish that the defendant has had "certain minimum contacts…such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  California's long-arm statute permits jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution.  Cal. Code Civ. Proc. § 410.10.  Therefore, the Court's jurisdictional analysis is merged into the single issue of whether the exercise of jurisdiction is within the limits of due process.  See *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993)

Personal jurisdiction may be conferred as either specific or general jurisdiction. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984).   PETA's sole jurisdictional allegation, made upon information and belief, is that "[BTF] has conducted business in this state through offering products for sale on its Internet website and, upon information and belief, importing products into this state." PETA's Complaint, ¶ 7. However, BTF's nineteen DVD sales to California customers over the Internet are clearly insufficient to constitute the minimum contacts for the Court to exercise personal jurisdiction. As set forth below, the California court has neither general nor specific jurisdiction over BTF.

### b.  **BTF Does Not Have Sufficient Minimum Contacts with the State of California to Confer General Jurisdiction.**

PETA does not and cannot allege that BTF is a resident of California or any other state within the United States.  The Complaint's sole basis for personal jurisdiction is that BTF "has conducted business in this state through offering products for sale on its Internet website and, upon information and belief, importing products into this state."  Compl., ¶¶ 5-7.  However, the nineteen DVDs sold to

19

California residents through BTF's website – which constitute less than two percent of BTF's overall sales of the Film, and are less than the New York sales – cannot justify the California Court's exercise of jurisdiction over it.

Courts may exercise general jurisdiction over a defendant if it has substantial, continuous, and systematic contacts with the forum state that amount to a physical presence there. *Helicopteros Nacionales*, supra, 466 U.S. at 416. The factors a court considers include all of the defendant's activities that impact the state, for example, whether defendant sells products, solicits or engages in business, serves the state's markets, designates an agent for service of process, holds a license, or has employees physically located in the state. Id. at 411. See also *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). "The level of contact with the forum state necessary to establish general jurisdiction is quite high." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 380 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991).

As addressed above, BTF has no substantial, continuous, or systematic contacts in California. BTF is a small United Kingdom-based film production company with its only offices located in London, England. Schonfeld Decl. ¶ 2. BTF's corporate offices, production facilities, distribution facilities, and manufacturing facilities are all located in the United Kingdom. *Id.* BTF does not own real or personal property in California, is not registered to do business in California, and does not have a registered agent in California. Id. BTF does not have any bank accounts or telephone listings in California, and does not pay taxes in California. Id. Simply stated, BTF does not conduct any business activity in California.

The nineteen DVDs California residents purchased through BTF's website in no way constitute "purposeful contact" with PETA's preferred forum state for purposes of general jurisdiction. In order for BTF's contacts to constitute business in

20

California, the commerce that it engages with residents of the forum state must be "in and of itself the kind of activity that approximates physical presence within the state's borders." *Bancroft & Masters v. Augusta Nat'l*, 223 F.3d 1082, 1086 (9th Cir. Cal. 2000)(<u>citing</u> *Helicopteros*, 466 U.S. at 41). Moreover, the Ninth Circuit has held that occasional, unsolicited sales to California residents are insufficient to create general jurisdiction. <u>Id.</u> at 1086.[4]

In determining whether personal jurisdiction is proper in the context of the Internet, the Ninth Circuit has applied a "sliding scale" test to ascertain what level of Internet activity is conducted in the forum state. *Katzenbach v. Grant,* 2005 U.S. Dist. LEXIS 46756 (E.D. Cal. June 7, 2005). The test requires a plaintiff to demonstrate that (1) the defendant clearly engaged in doing business over the Internet, *i.e.*, the website is highly interactive, and (2) the Internet business contacts with the forum state are substantial or continuous and systematic. <u>Id.</u> at *5.

The DVDs featuring the Film were manufactured in the United Kingdom, and purchase orders for it were processed in the United Kingdom. BTF sold approximately 950 copies of the Film. About half of these DVDs were sold to PETA at a "knock-down" price, and were shipped to PETA's headquarters in Norfolk, Virginia. Of the remaining, only nineteen[5] were sold to California. This number represents less than 2% of the total number of copies sold. The total transactions relating to the Film that took place after the websites were posted have accounted for

---

[4] The *Bancroft & Masters* Court stated,:
> The district court correctly found general jurisdiction lacking in this case, because ANI's contacts do not qualify as either substantial or continuous and systematic. ANI is not registered or licensed to do business in California. It pays no taxes in California, maintains no bank accounts in California, and targets no print, television, or radio advertising toward California. ANI's masters.org website is "passive," i.e., consumers cannot use it to make purchases. Furthermore, ANI's occasional, unsolicited sales of tournament tickets and merchandise to California residents are insufficient to create general jurisdiction.

223 F.3d at 1082.

21

---

approximately $29,000, of which only $360.62 was generated from those nineteen DVD sales to California residents.  Id.

Accordingly, and pursuant to the "sliding scale" test used in the Ninth Circuit, the extremely small percentage of BTF's revenues generated from Internet sales in California is insufficient to confer personal jurisdiction over it, as these sales do not represent a large percentage of its overall business activity.  See *Coastal Video Communs. Corp. v. Staywell Corp.*, 59 F. Supp. 2d 562 (E.D. Va. 1999) ("As with traditional business contacts, the most reliable indicator of the nature and extent of...Internet contact with the forum state will be the amount of sales generated in the state by or through the interactive website.").

Similarly, BTF did not intentionally target its website at California or "knowingly" conduct business with California state residents via the site.  *Moberg v. 33T LLC,* 666 F. Supp. 2d 415 (D. Del. 2009). See also *Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 550 (7th Cir. 2004) (finding that maintenance of the website does not support the exercise of personal jurisdiction in a foreign forum just because it can be accessed there.).

Because BTF has no regular, continuous, or systematic contacts in or with California, PETA cannot establish jurisdiction over it in the California action.

### c.  PETA's Claim does not Arise out of or Relate to Any Activity in California.

Similarly, PETA cannot establish a finding of specific jurisdiction over BTF in California.  Specific jurisdiction only exists where the cause of action arises out of or relates to the defendant's activities with the forum.  *Data Disc, Inc.,* supra, 557 F.2d at 1287.  "The likelihood that personal jurisdiction can be exercised is directly proportionate to the nature and quality of commercial activity that the entity conducts

---

[5] And, it appears that at least some of these were purchased by PETA, or counsel to PETA, in an attempt to manufacture minimum contacts.

over the Internet."  *Cybersell, Inc. v. Cybersell Inc.*, 130 F.3d 414, 419 (9th Cir. 1997).   Where jurisdiction over a foreign entity rests upon its contact, if any, with the United States under the federal long-arm statute in Fed.R. Civ. P. 4(k)(2), first, the nominative plaintiff's claim must arise under federal law; second, the putative defendant must not be subject to general jurisdiction in any state court; and, third, due process must be satisfied.  *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1159 (9th Cir. 2006).[6]

Here, there is no specific jurisdiction over BTF, even under the federal long-arm statute, because it took no action in California or purposely availed itself of the privilege of conducting activities in California.  Again, BTF's only contact with California is its limited to its website, which was accessible to residents in California.  However, PETA's claim appears to be unrelated to BTF's Internet presence, and certainly is unrelated to that Internet presence as it relates to any contacts with California.  Therefore, BTF lacks any significant contacts with the California forum that relate in any relevant way to this action.

Moreover, PETA cannot demonstrate that the exercise of personal jurisdiction over BTF would comport with the traditional notions of fair play and substantial

---

[6] The Ninth Circuit has created a three-part test to determine specific jurisdiction: "(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable." *Bancroft & Masters* supra,  223 F.3d at 1086.

To satisfy the first prong, a plaintiff must establish that the defendant purposefully directed its activities to California.  *Pebble Beach*, supra, 453 F.3d at 1155 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). "A defendant has purposefully availed himself of the benefits of the forum if he has deliberately 'engaged in *significant activities* within a state or has created '*continuing obligations*' between himself and the residents of the forum.'" *Gray & Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990) (quoting *Burger King v. Rudzewicz*, 471 U.S.462, 475-76 (1985)(emphasis added)).

The second prong requires showing that the claim arose out of the defendant's forum-related activities.  "A claim arises out of a defendant's conduct if the claim would not have arisen 'but for'

DEFENDANT BEYOND THE FRAME, LTD.'S RESPONSE TO THE COURT'S ORDER TO
SHOW CAUSE REGARDING TRANSFER OF ACTION

justice.  *See World Wide Volkswagen,*supra, 444 U.S. at 292; *International Shoe,* supra, 326 U.S. at 316.[7]  Because BTF aims none of its business activities, advertising, or transactions towards California, California has little, if any, interest in the resolution of this matter.  Indeed, it is curious why PETA, incorporated in Virginia with corporate offices located in Norfolk, Virginia, and promoting itself as "the largest animal rights organization in the world,"[8] ever brought its declaratory relief action in California.

Finally, BTF would shoulder an unreasonable burden in litigating its claims in California since it is not present in California, and most of the evidence and the witnesses are located in England, New York, or Virginia.  Consequently, forcing BTF to litigate this case on the other side of the continent would deprive BTF of its due process of law, since BTF has not done "some act or [consummated] some transaction with the forum or perform[ed] some act by which it purposefully [availed itself] of the privilege of conducting activities in [PETA's chosen] forum…" *Bancroft*, supra, 223 F.3d at 1086.

Based on the foregoing, no factors weigh in favor of the exercise of jurisdiction over BTF in California.  BTF therefore respectfully requests that the Court deny the Motion and allow BTF, as the plaintiff-in-fact in both cases, to litigate its claims in this, its chosen forum.  BTF submits that there is at least a question as to jurisdiction over it in California, and that, accordingly, this action should be transferred. *Columbia Pictures Indus., Inc. v. Schneider,* 435 F.Supp. 742, 748 (S.D.N.Y.1977)

---

the defendant's forum-related contacts."  *Silverlit Toys Manufactory, Ltd. v. Absolute Toy Marketing, Inc.*, 2007 WL521239 at *4 (N. D. Cal. 2007).

[7] In determining the third prong (on whether jurisdiction is reasonable), the court should analyze such factors as the extent of defendant's purposeful interjection into the forum state, the burden on the defendant, the plaintiff's interest in convenient and effective relief, the most efficient forum for judicial resolution of the dispute, the forum state's interest in adjudicating the dispute, and the extent of the conflict with the sovereignty of the defendant's state.  *Panavision International, L.P. v. Teoppen,* 141 F.3d 1316, 1323 (9th Cir. 1998).

[8] PETA About Us, http://www.peta.org/about/default.aspx  Exh. E.

24

DEFENDANT BEYOND THE FRAME, LTD.'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE REGARDING TRANSFER OF ACTION

(doubts concerning lack of personal jurisdiction in first filed action require stay of that action), aff'd, 573 F.2d 1288 (2d Cir.1978).

## III.  CONCLUSION

For the foregoing reasons, BTF respectfully requests that this Court dismiss this case, or transfer to New York.

Respectfully submitted,

DONIGER / BURROUGHS

DATED: March 7, 2011         By:    /s/ Scott A. Burroughs
                                    Scott A. Burroughs, Esq.
                                    Attorneys for Defendant
                                    BEYOND THE FRAME, LTD.

DEFENDANT BEYOND THE FRAME, LTD.'S RESPONSE TO THE COURT'S ORDER TO
SHOW CAUSE REGARDING TRANSFER OF ACTION